```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
TERRY HUGHES,

                                            ORDER
                Plaintiff,                  04 Civ. 7030 (KMW) (GWG)

        -v.-


SADDLE RIVER POLICE CHIEF
TIM MCWILLIAMS, et al.,

                Defendants.

-----------------------------------X
```

WOOD, U.S.D.J.:

Plaintiff Terry Hughes has brought this action pro se under 42 U.S.C. § 1983 alleging violations of his constitutional rights arising out of his arrest and detention in the fall of 2002. Hughes has asserted claims against a number of defendants, who may be grouped in the following categories: (1) the Borough of Saddle River, New Jersey; the Saddle River Police Department; Saddle River Police Chief Tim McWilliams (collectively, the "Saddle River defendants"); (2) the Westchester County Department of Corrections ("Westchester DOC"); (3) Catherine Bartlett, formerly the head of the Orange County Attorney's Office (sued as the "Legal Counsel for Orange County, New York"); Edward Diana, Orange County Executive; Timothy Conway, Orange County Sheriff's Department; Francis Phillips, District Attorney, Orange County; Jane Doe, Orange County (collectively, the "Orange County Defendants"); and (4) James Comey, former United States Attorney

for the Southern District of New York ("SDNY"); Stephen Miller, Assistant United States Attorney in the SDNY; Agents Weber and Maxwell of the Federal Bureau of Investigation ("FBI"); Keith Talbert, a Criminal Investigator in the SDNY; and New York City Police Officer Daniel Hourihan (collectively, the "federal defendants").[1]

Westchester DOC and the Orange County defendants have moved to transfer the case to the White Plains Courthouse. In addition, all defendants have either moved to dismiss and/or moved in the alternative for summary judgement. For the following reasons, the motion to transfer is granted.

I. BACKGROUND

   A. Hughes's Federal Arrest and Prosecution

The complaint and accompanying materials reveal the following: in August 2002, the FBI and the New York Joint Terrorism Task Force ("JTTF") purportedly received information from a confidential informant regarding Hughes's involvement in criminal activity. See Affidavit in Support of Complaint and Application for Search Warrant, dated Sept. 6, 2002 (annexed as Ex. A to Complaint, filed Sept. 1, 2004 (Docket #1) ("Compl.") and as Ex. A to Declaration of Stephen A. Miller, filed Apr. 27, 2005 (Docket #38) ("Miller Decl.")) ("Fed. Aff."), ¶¶ 5-9, 12-15;

---

[1] Officer Hourihan is being represented by the United States Attorney's Office.

2

Miller Decl. ¶¶ 3-4. After the JTTF conducted an investigation of Hughes, Miller and Detective Hourihan drafted an affidavit in support of an application for a search warrant, citing largely to the confidential informant. See Fed. Aff. ¶¶ 5-9, 13-14; Miller Decl. ¶¶ 5-6. The informant stated that Hughes was a trained chemical engineer and had admitted to possessing toxic chemicals in the basement of his house located at 102 Capitol Drive, Washingtonville, Orange County, New York. Fed. Aff. ¶¶ 4-5, 7. The informant provided an email in which Hughes appeared to threaten to use chemical weapons and also described threats Hughes had made regarding the county's water supply. Id. ¶¶ 6, 8-9. The informant also stated that Hughes possessed an M-16 automatic machine gun. Id. ¶ 5. The affidavit stated that Hughes had been arrested in 1971 by the Saddle River Police Department for assault, attempted assault, and attempt to commit robbery and was convicted of assault on July 27, 1972. Id. ¶ 12.

Based on the affidavit, a search warrant for Hughes's residence in Washingtonville was issued by Magistrate Judge George Yanthis of the SDNY in White Plains and the search was executed on September 6, 2002. See Search Warrant, dated Sept. 6, 2002 (annexed as Ex. A to Compl.); Miller Aff. ¶¶ 6-7. At the same time, Miller and Detective Hourihan sought an arrest warrant based on a criminal complaint charging Hughes under the federal "felon-in-possession" statute. See Sealed Complaint, dated Sept.

3

6, 2002 (annexed as Ex. A to Compl. and Ex. B to Miller Decl.). Judge Yanthis signed the complaint and issued the arrest warrant. Id.; Miller Decl. ¶ 10. Hughes was thereafter arrested by the JTTF and detained without bail in a Westchester County jail. Miller Decl. ¶ 11; Compl. at 18-19.

On September 12, 2002, Miller and Talbert prepared a second criminal complaint charging Hughes with sending a threat in interstate commerce and the complaint was submitted to a Magistrate Judge at the SDNY White Plains Courthouse, who signed it and dismissed the first complaint. See Complaint, dated Sept. 12, 2002 (reproduced as Ex. C to Miller Decl.); Miller Decl. ¶ 13. Hughes was released from federal custody on September 13, 2002, subject to certain conditions. Miller Decl. ¶ 14. Ultimately, Hughes entered into a deferred prosecution agreement. Id. ¶¶ 16-17.

B. Hughes's § 1983 Complaint

The first set of claims in Hughes's complaint stem from his arrest on the federal charges. First, Hughes asserts that the Borough of Saddle River falsely claimed that he had been convicted of a crime and that they communicated this false information to the New York City Police Department and/or federal officials. See Compl. at 3, 15. He claims that Comey, Miller, Investigator Talbert, and Detective Hourihan fabricated his prior conviction and arrest record and that the "confidential

4

informant" was fictitious. Id. at 3-5, 7. Hughes also claims that his right to equal protection was violated by Comey, Miller, and Detective Hourihan because they asserted that they had probable cause to arrest him, in part, because he was a chemical engineer. Id. at 7. Finally, he suggests that the JTTF agents took money from his home during the search. See id. at 4, 10.

Hughes also makes several claims of defamation against the federal defendants. He avers that at a press conference outside the courtroom in White Plains, Miller told reporters that a map of the Orange County Public Water Supply had been discovered during the search of Hughes's residence and that this was evidence that Hughes intended to poison the local water supply. Id. at 4. He asserts that Agent Weber falsely informed a local newspaper that Hughes had been convicted of aggravated assault, and that Agent Maxwell told the same newspaper that a "box of chemicals" had been taken from Hughes's home even though no chemicals were actually recovered. Id. at 7-8.

While detained at the Westchester facility, Hughes asserts that he was deprived of his right to counsel. Id. at 2, 19. He claims that prisoners could not contact their attorneys unless their attorneys either used Verizon phone services or first posted a bond, and that all calls were monitored. Id. at 2, 19-20. Hughes also claims that the Westchester facility withheld necessary medication from him while he was confined. Id. at 2-3,

5

18-19.

Hughes's claims against the Orange County defendants arise out of a separate but related sequence of events. After Hughes was arrested by the JTTF on September 6, he was dismissed from his position as a Public Health Engineer with the Orange County Health Department. Id. at 16. He was then arrested and prosecuted for failing to disclose his New Jersey conviction on his job application. See id. at 15-18. Hughes asserts that in fact he had not been convicted of a crime. Id. at 17.

Hughes alleges that Timothy Conway of the Sheriff's Department negligently failed to check whether or not Hughes was actually convicted of a crime; that Francis Phillips, the District Attorney of Orange County, prosecuted him without adequately investigating his past conviction; that Catherine Bartlett, then head of the Orange County Attorney's Office, denied him access to his desk after he was fired and publicly announced that he was dismissed for making false statements on his employment application; and that Edward Diana fired him before the disposition of the criminal charges and publicized his arrest. Id. ¶¶ 15-18.

Finally, Hughes alleges that he was going to be a candidate for the position of Highway Superintendent for the town of Blooming Grove (Orange County), but that his arrest and detention deprived him of the right to run for elected office. Id. at 1-2.

6

C. <u>Defendants' Motions</u>

The Orange County defendants and Westchester DOC have moved to transfer the case from Manhattan to White Plains as well as to dismiss. <u>See</u> Motion to Transfer and Dismiss, filed Feb. 28, 2005 (Docket #20); Motion to Dismiss and to Transfer, filed Feb. 22, 2005 (Docket #18). The Saddle River defendants and the federal defendants have moved for summary judgment. <u>See</u> Motion for Summary Judgment, filed Feb. 22, 2005 (Docket #16); Motion for Summary Judgment, filed Apr. 27, 2005 (Docket #35).

II. <u>DISCUSSION</u>

Local Rule 21 of the Rules for the Division of Business Among District Judges provides in relevant part that civil cases "shall" be designated for assignment to White Plains if "[t]he claim arose in whole or in major part in the Counties of Dutchess, Orange, Putnam, Rockland, Sullivan and Westchester (the "Northern Counties") and at least one of the parties resides in the Northern Counties." Under Rule 22, "[t]he attorney for any other party may move for the reassignment of the case to the other place of holding court . . . or the judge to whom the case is assigned may reassign it <u>sua sponte</u>, in the interest of justice or sound judicial administration."

Westchester DOC and the Orange County defendants urge the Court to transfer the case to White Plains because all the relevant events occurred in Orange or Westchester Counties,

7

Hughes lives in Orange County, the majority of the defendants live and/or work in Orange County or Westchester County, and most of the evidence and witnesses are in the Northern Counties.  See Memorandum of Law in Support of Motion to Dismiss, filed Feb. 22, 2005 (Docket #19) ("Westchester Br."), at 6-7; Memorandum of Law, filed Feb. 28, 2005 (Docket #21) ("Orange County Br."), at 7-8.  They further argue that, should the case proceed to trial, parties residing in the Northern Counties would be greatly inconvenienced by having to travel to Manhattan.  Westchester Br. at 7; Orange County Br. at 8-9.

No defendant has raised any objection to transfer.  Nor does Hughes appear to have submitted any objections to the motion to transfer. In a document titled "Response to Westchester County's Motion to Dismiss," he states that he has addressed the motion to transfer in a separate document which he has sent to the parties, and notes that the case should not be transferred "for the reasons given in [his] response."  See Response to Westchester County's Motion to Dismiss, filed Apr. 4, 2005 (Docket #31), at 1.  There is no record of this document, however, either in the Court's files or on the docket sheet.  Furthermore, neither the Westchester DOC nor the Orange County defendants appear to have received this document as they state in their reply memoranda that Hughes has not responded to their motion to transfer.  See Memorandum of Law (Orange County), dated Mar. 28, 2005, at 8;

8

Reply Memorandum of Law (Westchester County), dated Mar. 31, 2005, at 2.

In any event, it is clear that the defendants' motion is meritorious inasmuch as Hughes's claims "arose in whole or in major part in the . . . Northern Counties" under Rule 21. The federal investigation arose out of the United States Attorney's White Plains Office. See Miller Decl., ¶ 15. The search and arrest warrants were issued by a judicial officer in the White Plains courthouse. The property searched was located in Orange County and thus the alleged theft took place there. Hughes was arrested in Orange County and was brought to a jail in Westchester County. He alleges improper treatment at a Westchester County facility. All the alleged defamatory statements were made or published in Westchester or Orange Counties. Hughes's firing took place in Orange County. Nothing occurred in Manhattan or the Bronx. The only events that took place outside of the Northern Counties occurred in New Jersey with respect to the allegations against the Saddle River defendants. Thus, Hughes's claims arose in whole or in substantial part in the Northern Counties.

In addition, it appears that virtually every defendant (other than the Saddle River defendants) either resides or works in the Northern Counties. Given the location of the incidents, the same must be assumed with respect to any potential witnesses.

Thus, it would plainly be more convenient for the majority of the defendants and witnesses if they were not required to come to Manhattan to attend court proceedings.

Finally, no judicial officer in New York City has had any involvement with the substantive issues in this case. All that has occurred is that Magistrate Judge Gorenstein has held a conference at which he set a briefing schedule for motions and subsequently issued orders granting extensions of that schedule.

Accordingly, this case was required to have been designated for the White Plains courthouse under Rule 21 and thus should now be transferred to that courthouse under Rule 22. See Cardenas v. Premier Investigations, Inc., 2004 WL 2782955, at *1 (S.D.N.Y. Dec. 2, 2004) (granting motion to transfer where the claims arose in major part in Westchester County, most parties and non-party witnesses lived in Westchester County and the court had not held any proceedings in the case); Tiffany v. Tartaglione, 2001 WL 15677, at *1-*2 (S.D.N.Y. Jan. 5, 2001) (reassignment to White Plains appropriate where all parties resided in Westchester County, all of the events occurred there, and no significant judicial proceedings had occurred); Nixon v. Diehm, 2000 WL 280009, at *2-*3 (S.D.N.Y. Mar. 14, 2000) (motion to reassign granted where all the events at issue occurred in Orange County, the defendants lived and/or worked in Orange County, the defendants would suffer financial and administrative hardship

coming into Manhattan, and no proceedings had been held); cf. Ginsberg v. Valhalla Anesthesia Assocs., P.C., 171 F.R.D. 159, 160 (S.D.N.Y. 1997) (declining to transfer action to White Plains where defendant failed to make a prompt motion for reassignment, and court had already held a pretrial conference, entered a pretrial scheduling order, ruled on several pretrial matters, and set a trial date).

Conclusion

For the foregoing reasons, the motion to transfer is granted. The Clerk is requested to randomly assign this matter to a new United States District Judge and United States Magistrate Judge located in White Plains.

SO ORDERED.

Dated:   New York, New York
         June 30, 2005

*[signature]*
Kimba M. Wood
United States District Judge

Copies mailed to:

Terry Hughes
102 Capital Drive
Washingtonville, NY 10992-1336

Christopher Charles Botta
Botta & Carver LLP
50 South Franklin Turnpike
Ramsey, NJ 07446

Irma W. Cosgriff
Senior Assistant County Attorney
148 Martine, 6th Floor
White Plains, NY 10601

Hyun Chin Kim
Assistant County Attorney
Government Center
255 Main Street
Goshen,  NY 10924

Ross E. Morrison
U.S. Attorney's Office
86 Chambers Street
New York, NY 10007