**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**TERRY HUGHES,**

                          **Plaintiff,**

       *- against -*

**SADDLE RIVER POLICE CHIEF TIMOTHY**
**McWILLIAMS, et al.,**

                         **Defendants.**

04 Civ. 7030 (SCR)(LMS)

**REPORT AND RECOMMENDATION**

## Table of Contents

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.    Procedural History, Summary of Litigants, and Summary of Report and
          Recommendation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.    Facts Prior to the Commencement of the Lawsuit . . . . . . . . . . . . . . . . . . . . . . . 7

    C.    Summary of Defendants' Dispositive Motions . . . . . . . . . . . . . . . . . . . . . . . . . 10

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    A.    The Saddle River Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
          1.    Plaintiff's Claims Against the Saddle River Defendants . . . . . . . . . . . . 12

          2.    The Saddle River Defendants' Motion for Summary Judgment . . . . . . . 13
               a.    Rule 12(b)(6) versus Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . 13

               b.    The Saddle River Defendants' Motion for Summary Judgment . 15

    B.    Defendant Westchester County . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          1.    Plaintiff's Claims Against Defendant Westchester County . . . . . . . . . . 16

          2.    Defendant Westchester County's Motion to Dismiss . . . . . . . . . . . . . . 17
               a.    Plaintiff's Fourth and Fourteenth Amendment Claims . . . . . . . 19

               b.    Plaintiffs Denial of Right to Counsel and
                     Equal Protection Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

               c.    Plaintiff's Denial of Right to Defend Himself Against State
                     Criminal Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

          3. Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    C.    Orange County Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
          1.    Defendant Timothy Conway, Orange County Sheriff's Department
              and the Orange County Sheriff's Department . . . . . . . . . . . . . . . . . . . 26
               a.    Plaintiff's Claims Against Defendant Conway in His
                     Personal Capacity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

               b.    Defendant Conway's Motion to Dismiss . . . . . . . . . . . . . . . . . 26
                    i.    Plaintiff's First Amendment Claim . . . . . . . . . . . . . . . 26
                    ii.    Plaintiff's Fourth and Fifth Amendment Claims . . . . . . . 27

                a.     Plaintiff's Fourth Amendment Tort Claims . . . . . 27
                b.     Plaintiff's Fifth Amendment Claims . . . . . . . . . 31
       iii.    Plaintiff's Privileges and Immunities Clause Challenge . 33
       iv.    Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

2.      Defendant Catherine Bartlett, Office of Legal Counsel,
       County of Orange, and the Office of Legal Counsel . . . . . . . . . . . . . 36
       a.     Plaintiff's Claims Against Defendant Bartlett in Her
            Personal Capacity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

       b.     Defendant Bartlett's Motion to Dismiss . . . . . . . . . . . . . . . . . . 38
         i.     Plaintiff's Deprivation of Personal Property Claim . . . 38
         ii.    Plaintiff's Deprivation of Liberty Claim . . . . . . . . . . . . 40

       c.     Claims Against Defendant Bartlett in Her Official Capacity . . . 42

3.      Defendant Edward Diana, Orange County Executive
       and Orange County . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
       a.     Plaintiff's Claims Against Defendant Diana in His Personal
            Capacity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

       b.     Defendant Diana's Motion to Dismiss . . . . . . . . . . . . . . . . . . . . 43
         i.     Plaintiff's Fourth Amendment Claims . . . . . . . . . . . . . . 43
         ii.    Plaintiff's Privileges and Immunities Clause Claim . . . . 43
        iii.    Plaintiff's Fifth Amendment Claim . . . . . . . . . . . . . . . . 44

       c.     Plaintiff's Claims Against Defendant Diana in His Official
            Capacity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

       d.     Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

4.      Defendant Francis Phillips, Orange County District Attorney . . . . . . . 46
       a.     Plaintiff's Claims Against Defendant Phillips in His Personal
            Capacity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

       b.     Defendant Phillip's Motion to Dismiss . . . . . . . . . . . . . . . . . . . 47

       c.     Plaintiff's Claims Against Defendant Phillips in His Official
            Capacity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

       d.     Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

5. Defendant Jane Doe and Unknown Agency, Orange County . . . . . . . . . . . . 50

D.      The Federal Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

         1.     Defendants James Comey and Stephen Miller Sued in Their Personal
                Capacities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

                a.     Plaintiff's Claims Against Defendants Comey and Miller . . . . . 51

                b.     Defendants Comey and Millers' Motion to Dismiss . . . . . . . . . 52

         2.     Defendant Donald Weber, Senior Supervisory Special Agent . . . . . . . . 55

                a.     Plaintiff's Claims Against Defendant Weber . . . . . . . . . . . . . . 55

                b.     Defendant Weber's Motion to Dismiss . . . . . . . . . . . . . . . . . . . 56

         3.     Defendant Kenneth Maxwell, FBI Special Agent . . . . . . . . . . . . . . . . . 58

                a.     Plaintiff's Claims Against Defendant Maxwell . . . . . . . . . . . . . 58

                b     Defendant Maxwell's Motion to Dismiss . . . . . . . . . . . . . . . . . 59

                      i.     Plaintiff's First Amendment, Fifth Amendment
                           Deprivation of Property, Sixth Amendment and
                           Privileges and Immunities Clause Claims . . . . . . . . . . 59
                      ii.     Plaintiff's Fifth Amendment
                           Deprivation of Liberty Claim . . . . . . . . . . . . . . . . . . . 60
                      iii.     Plaintiff's Fourth Amendment Claims . . . . . . . . . . . . . . 61

         4.     Defendant Keith Talbert, Criminal Investigator for the S.D.N.Y. . . . . . 63

                a.     Plaintiff's Claims Against Defendant Talbert . . . . . . . . . . . . . . 63

                b.     Defendant Talbert's Motion to Dismiss . . . . . . . . . . . . . . . . . . 63

         5.     Defendant Daniel Hourihan, New York City Police Officer . . . . . . . . . 66

                a.     Plaintiff's Claims Against Defendant Hourihan . . . . . . . . . . . . 66

                b.     Defendant Hourihan's Motion to Dismiss . . . . . . . . . . . . . . . . 68
                      i.     Plaintiff's Fifth Amendment Claims . . . . . . . . . . . . . . . 69

                      ii.     Plaintiff's Fourth Amendment Claims . . . . . . . . . . . . . . 71

E.      Plaintiff's Motion for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

Notice to Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

**TO:    THE HONORABLE STEPHEN C. ROBINSON,**
           **UNITED STATES DISTRICT JUDGE**

Plaintiff Terry Hughes (herein, "Plaintiff"), proceeding pro se, commenced this civil rights lawsuit against multiple law enforcement and municipal defendants for alleged violations of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights, and for alleged violations of his rights under the Privileges and Immunities Clause of the United States Constitution, Article IV, Section Two, Paragraph One. See Plaintiff's Complaint (herein, "Compl.") at p. 1, ¶1.[1] Plaintiff, bringing this lawsuit pursuant to 42 U.S.C. §1983 and Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), seeks redress for these alleged injuries in the form of monetary damages and injunctive relief. See Compl. at pp. 21-26, ¶4(a) - (m). For the following reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the defendants' dispositive motions should be granted in part and denied in part.

## BACKGROUND

A.      Procedural History, Summary of Litigants, and Summary of Report and Recommendation

This case comes before this Court by way of an Order dated June 30, 2005, by the Honorable Kimba M. Wood, United States District Judge for the Southern District of New York, which transferred this case from the District's Manhattan Courthouse to Your Honor's docket in the White Plains courthouse. See Docket #46, Order (herein, "Transfer Order"). In her June 2005 Transfer Order, Judge Wood granted motions made by two groupings of defendants to transfer this case to the White Plains Courthouse pursuant to Local Rules 21 and 22. See Transfer Order at p. 11. In the body of the Transfer Order, Judge Wood graciously summarized

---

[1] Due to the lengthy nature of the Plaintiff's Complaint, citations to the Complaint will include a reference to both a page number and a paragraph number.

the facts of the case and provided a breakdown of the sixteen named defendants into four discrete groups. See Transfer Order at p. 1-2.

For the purposes of consistency, this Report and Recommendation will follow the allocation of defendants into the four discrete groups as articulated by Judge Wood, which are as follows: (1) Saddle River Police Chief Timothy McWilliams; the Saddle River Police Department; and the Borough of Saddle River, New Jersey (collectively herein, "Saddle River Defendants"); (2) the Westchester County Department of Corrections (herein, "Defendant Westchester County")[2]; (3) Catherine Bartlett, former head of the Orange County Attorney's Office; Edward Diana, Orange County Executive; Timothy Conway, Orange County Sheriff's Department; Francis Phillips, District Attorney for Orange County; Jane Doe, Orange County; and Orange County itself (collectively herein, "Orange County Defendants")[3]; and (4) James Comey, former United States Attorney for the Southern District of New York; Stephen Miller, Assistant United States Attorney, Southern District of New York; Keith Talbert, Criminal Investigator, Southern District of New York; Donald Weber, Senior Supervisory Special Agent (identified as "Agent Weber" in the Complaint); Kenneth Maxwell, FBI Assistant Special Agent (identified as "Agent Maxwell" in Complaint); and Daniel Hourihan, Detective, New York City

---

[2] Defendant Westchester County asserts that it was improperly named as "Westchester Department of Corrections." See Docket #18, Notice of Motion to Dismiss and to Transfer.

[3] In addition to these Defendants, a liberal reading of the Plaintiff's Complaint leads me to conclude that the Plaintiff also names the Orange County Sheriff's Department, the Office of Legal Counsel, the Orange County District Attorney's Office, and "Unknown Agency, Orange County, Goshen, New York," as defendants. See Compl. at ¶¶4(c), (d), (f) and (g). Insofar as Plaintiff seeks to state claims of relief against these entities, I conclude and respectfully recommend that Your Honor should conclude, that the Complaint be dismissed as they are not "persons" withing the meaning of the term under § 1983. See Bowman v. City of Middletown, 91 F. Supp. 2d 644, 648 n.1 (S.D.N.Y. 2000).

Police Department[4] (collectively herein, "Federal Defendants"). Thus, there exist four categories of defendants, each represented independently, and each of whom have made their own respective motions either to dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(6), or for summary judgment pursuant to FED. R. CIV. P. 56(c).

For purposes of clarity, the grouping of defendants is again as follows: (1) the Saddle River Defendants; (2) Defendant Westchester County; (3) the Orange County Defendants; and (4) the Federal Defendants. In light of the somewhat haphazard organization of the Plaintiff's Complaint, and the complexity of four separate motions on behalf of sixteen individually named defendants, I provide the following summary:

(1)     The Complaint against the Saddle River Defendants should be dismissed in its entirety.

(2)     The Complaint against Defendant Westchester County should be dismissed in its entirety.

(3)     The Complaint against the Orange County Defendants should be dismissed in part.

(4)     The Complaint against the Federal Defendants should be dismissed in its entirety.

B.     Facts Prior to the Commencement of the Lawsuit

Pursuant to information provided by a confidential informant, the Federal Bureau of Investigation (herein, "FBI") and the New York Joint Terrorism Task Force (collectively herein,

---

[4] As Detective Hourihan participated in the Joint Terrorism Task Force with the Federal Bureau of Investigation, and is represented by the United States Attorney's Office, Detective Hourihan is included in the Federal Defendants grouping even though he is not employed by the federal government. See Transfer Order at p.2 n.1. The analysis of the claims the Plaintiff has made against Defendant Hourihan is not effected by this nomenclature.

the "JTTF") believed that the Plaintiff possessed toxic chemicals in the basement of his Washingtonville, New York, home and had threatened to use them approximately one year after September 11, 2001. See Docket #38, Declaration of Stephen A. Miller (herein, "Miller Declaration"), Ex. A, Affidavit in Support of Complaint and Application for Search Warrant (herein, "Hourihan Affidavit") at ¶¶5-7. The threats Plaintiff was alleged to have made included statements about his hatred toward the United States, statements about his desire to use his knowledge of chemicals for the purposes of exacting revenge on unnamed enemies, and statements about how he had access to an unspecified water supply and that the "best way to bring down a country was to attack its water supply . . . ." See Hourihan Affidavit at ¶¶5-9.

In addition to believing that the Plaintiff possessed chemicals and had made threatening statements, the JTTF also believed that the Plaintiff was in possession of an M-16 automatic machine gun. See Miller Declaration, Ex. B, Sealed Complaint. The JTTF had reason to believe that Plaintiff had been convicted of a crime punishable by a term exceeding one year in Bergen County (N.J.) Superior Court on July 27, 1972, for aggravated assault, and that his possession of the M-16 automatic machine gun was therefore in violation of 18 U.S.C. §922(g)(1).[5] Id.

Based upon the aggregate of this information, Assistant United States Attorney Stephen Miller filed a Complaint alleging that the Plaintiff illegally possessed an M-16 automatic machine gun in violation of §922(g)(1), and obtained a search warrant to search the Plaintiff's residence for, *inter alia*, the M-16 automatic machine gun and any chemical weapons or

---

[5] Section 922(g)(1) of Title Eighteen of the United States Code makes it a crime for anyone "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

explosives.  See Miller Declaration, Ex. A.  On September 6, 2002, the Honorable George A.

Yanthis, United States Magistrate Judge, signed the Complaint authorizing the arrest of the

Plaintiff for a violation of 18 U.S.C. §922(g)(1), and signed the search warrant authorizing the

search of the Plaintiff's Washingtonville, New York residence.  See Miller Declaration, Ex. A

and B.

The JTTF executed the search warrant on the Plaintiff's residence and arrested the

Plaintiff on September 6, 2002.  Thereafter, the Plaintiff was detained without bail in a

Westchester County jail.  See Docket #35, Federal Defendants' 56.1 Statement (herein, "Federal

Defs' 56.1 Statement") at ¶¶ 23, 30-31.  Subsequent to his arrest and detention, another

Complaint was filed against the Plaintiff, which was signed by the Honorable Mark D. Fox,

United States Magistrate Judge, on September 12, 2002, alleging a violation of 18 U.S.C.

§875(c), which makes it a crime to transmit in interstate and foreign commerce a communication

containing a threat to injure the person of another.  See Miller Declaration, Ex. C, Complaint for

Violation of 18 U.S.C. §875(c).  Subsequent to the filing of the second Complaint, and at the

Government's request, the initial Complaint alleging a violation of 18 U.S.C. §922(g)(1) was

dismissed without prejudice.  See Federal Defs' 56.1 Statement at ¶35.

On September 13, 2002, the Plaintiff was released from custody on $250,000 bail, subject

to home detention with electronic monitoring, and was ordered to undergo a mental health

evaluation.  See Federal Defs' 56.1 Statement at ¶36.  After a number of orders of continuance

were granted,[6] the Government and Plaintiff, represented by counsel, entered into a deferred

[6] This lawsuit involves actions taken by several judges sitting in the White Plains Federal
Courthouse, including Magistrate Judge Yanthis and Magistrate Judge Fox.  In order to insure
transparency, I note that the Plaintiff's criminal case also was before the undersigned, but only

prosecution agreement with the understanding that if the Plaintiff were to comply with the various provisions of the agreement, the Government would not prosecute the Plaintiff in the Southern District of New York. <u>See</u> Federal Defs' 56.1 Statement at ¶37.

Concomitant with the Plaintiff's arrest on the federal criminal charges in September of 2002, the Plaintiff's employer, Orange County, dismissed the Plaintiff for providing false information on his employment application. <u>See</u> Docket #21, Memorandum of Law at p. 5. In his application for employment with the Orange County Department of Health, the Plaintiff stated that he had never been convicted of a crime. <u>See</u> Docket #20, Notice of Motion, Ex. B, Plaintiff's Application for Employment. On September 19, 2002, the Orange County Sheriff's Office arrested the Plaintiff and charged him with two counts of filing a false instrument in violation of N.Y. PENAL LAW §175.35 based upon the purportedly false statements he had made in his employment application. <u>See</u> Docket #21, Memorandum of Law at p. 5. Orange County concedes that it ceased pursuing these claims once the Plaintiff revealed that there existed a Court Order, dated April 27, 1984, from a New Jersey Superior Court expunging his prior conviction. <u>Id.</u>

C.     <u>Summary of Defendants' Dispositive Motions</u>

Plaintiff commenced the instant lawsuit on September 1, 2004. Plaintiff's Complaint was filed in the Federal Courthouse in Manhattan, and was originally assigned to United States District Judge Kimba M. Wood and to United States Magistrate Judge Gabriel W. Gorenstein. Prior to Judge Wood's June 30th Transfer Order, only one pretrial conference was held before

---

for the purpose of granting joint requests for orders of continuance so that the Government and Plaintiff could continue negotiations in lieu of trial. The undersigned had no other involvement in the underlying criminal charges that serve as the predicate for the Plaintiff's instant lawsuit.

Magistrate Judge Gorenstein.  Each separate group of defendants represented to Judge Gorenstein that they each intended to file either a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), or a motion for summary judgment under Federal Rule of Civil Procedure 56.  See Docket #33, Transcript of Civil Cause for Initial Conference before The Honorable Gabriel W. Goresnstein, U.S.M.J.  At that time, Defendant Westchester County and the Orange County Defendants also stated that they would make motions to transfer the case to the White Plains Federal Courthouse pursuant to Local Rules 21 and 22.  Id.

On June 30, 2005, Judge Wood ordered the case transferred to the White Plains Federal Courthouse.  Judge Wood, however, did not rule on any of the substantive motions to dismiss or for summary judgment.  The following is a summary of each defendant's dispositive motion:

(1)    The Saddle River Defendants made a motion for summary judgment pursuant to FED. R. CIV. P. 56.  See Docket #16, Notice of Motion.

(2)    Defendant Westchester County filed a motion to dismiss under FED. R. CIV. P. 12(b)(6) for failure to state a claim.  See Docket ##18, 19, Notice of Motion and Memorandum of Law.

(3)    The Orange County Defendants also made a motion to dismiss under Rule 12(b)(6).  See Docket ##20, 21, Notice of Motion to Dismiss and Memorandum of Law.

(4)    The Federal Defendants filed a motion to dismiss under Rule 12(b)(6), and in the alternative, filed a motion for summary judgment under Rule 56.  See Docket ## 35-38.

(5)    In June of 2005, the Plaintiff filed his own  motion for summary judgment.  See Docket #49.

For the reasons discussed, infra, I conclude, and respectfully recommend that Your

Honor should conclude, that the defendants' outstanding dispositive motions be granted in part and denied in part, and that the Plaintiff's motion for summary judgment be denied without prejudice.

**DISCUSSION**

A.      The Saddle River Defendants

        1.      Plaintiff's Claims Against The Saddle River Defendants

Plaintiff only provides one paragraph of text in his otherwise lengthy Complaint articulating his claims against the Saddle River Defendants.  See Compl. at p.15, ¶4(b).  The gravamen of the Plaintiff's argument against the Saddle River Defendants focuses on the allegation that the Plaintiff's criminal record was not expunged properly despite an April 27, 1984, Court Order directing such expungement.  Id.  Within this paragraph, Plaintiff argues that violating such a Court Order "generally made one subject to contempt of court . . . ."  Id.  Plaintiff references violations of "numerous amendments and a clause of the United States Constitution" that he submits have been previously enumerated, but does not specify which amendments he is referring to or how the purported violation of the April 27, 1984, Court Order specifically violated any of his constitutional rights.  Id.

Plaintiff fails to clarify his claims against the Saddle River Defendants in his response to their motion for summary judgment.  See Docket #32, Plaintiff's Collective Response to Defendants' Motions.  In the section entitled "Plaintiff's Response to Summary Judgment Motion of Defendant Saddle River Police Chief Tim McWilliams," Plaintiff restates the facts leading up to his arrest and the search of his home, but does not identify with any additional particularity the specific constitutional violations he claims to have endured at the hands of the

12

Saddle River Defendants.  See id.  Finally, in a "response to the response," Plaintiff continues to suggest that "somebody" forged a document causing the JTTF to discover that the Plaintiff had a prior – albeit expunged – criminal history, which in turn set the aforementioned chain of events in motion.  See Docket #39, Declaration of Terry Hughes.

    2.    The Saddle River Defendants' Motion for Summary Judgment

On February 22, 2005, the Saddle River Defendants filed a motion for summary judgment seeking the dismissal of the Plaintiff's Complaint against them in its entirety.  See Docket #16.  I conclude, and respectfully recommend that Your Honor should conclude, that the Saddle River Defendants' motion for summary judgment should be construed as a motion to dismiss made pursuant to Rule 12(b)(6), and that the motion to dismiss should be granted.

    a.    Rule 12(b)(6) motion to dismiss versus Rule 56 motion for summary judgment

Federal Rule of Civil Procedure 12(b)(6) provides that an answering party may assert that a complaining party has "fail[ed] to state a claim upon which relief can be granted . . ." in addition to, or in lieu of, a responsive pleading, such as an Answer.  FED. R. CIV. P. 12(b)(6).  A Rule 12(b)(6) motion is appropriate when "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Stated another way, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."  Neitzke v. Williams, 490 U.S. 319, 326 (1989).  Thus, when reviewing a 12(b)(6) motion, it is appropriate for the court only to determine the legal sufficiency of the Complaint, not to weigh the evidence that may be presented at trial.  See Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  In accord with these precepts, the Court "must accept as true all the factual allegations in the Complaint,"

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993), and draw reasonable inferences in the Plaintiff's favor, Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004).

Differing from a Rule 12(b)(6) motion, a motion for summary judgment made pursuant to Rule 56, by definition, consists of a weighing of the sufficiency of the admissible evidence prior to trial to determine if there exists a "genuine issue as to any material fact . . . ." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 320-23 (1986). Once a party makes such a motion, the Court then must determine whether there are any genuine issues that properly can be resolved only by a finder of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similar to a Rule 12(b)(6) motion, the Court should "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in [his or her] favor." Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002).

Typically, a motion for summary judgment is appropriate only after discovery has been completed and the nonmoving party "had the opportunity to discover information that is essential to his [or her] opposition" to the motion for summary judgement. Anderson, 477 U.S. at 250 n.5. This understanding, however, has been relaxed in cases where it is clear that a plaintiff cannot prevail on any claim, and where conducting pretrial discovery would only be a formality that would allow a party to make a subsequent motion for summary judgment. See, e.g., Byerly v. Ithaca College, 290 F. Supp. 2d 301, 306 (N.D.N.Y. 2003) (noting that there are some circumstances where a pre-discovery motion for summary judgment is appropriate).

Moreover, the Second Circuit has recently revived a line of reasoning holding that when a motion for summary judgment is made on the pleadings before discovery, such a motion can be

treated as a motion to dismiss. See Muntaqim v. Coombe, 366 F.3d 102, 106 (2d Cir. 2004)

(citing Schwartz v. Compagnie General Transatlantique, 405 F.2d 270, 273 (2d Cir. 1968) ("a

trial judge may dismiss for failure to state a cause of action upon [a] motion for summary

judgment.")).  In addition, District Judges within this Circuit occasionally have converted a pre-

discovery motion for summary judgment into a Rule 12(b)(6) motion to dismiss.  See, e.g.,

Lawrence v. Richman Group Capital Corp., 303 CV 850 (JBA), 2005 WL 3448056, at *1 n.2 (D.

Conn. Dec. 15, 2005); Katz v. Molic, 128 F.R.D. 35, 38 (S.D.N.Y. 1989).

> b.      The Saddle River Defendants' Motion for Summary Judgment

In this case, the Saddle River Defendants filed a pre-discovery motion for summary

judgment.  See Docket # 16, Notice of Motion for Summary Judgment.  In light of the revived

case law articulated in Schwartz, I conclude, and respectfully recommend that Your Honor

should conclude, that this is an appropriate case where the pre-discovery motion for summary

judgment should be converted into a Rule 12(b)(6) motion to dismiss.  Accordingly, the focus

should be on the legal sufficiency of the Plaintiff's causes of action under Rule 12(b)(6) rather

than on whether there exists a genuine issue of material fact for trial.

In accord with the Rule 12(b)(6) standard, I conclude, and respectfully recommend that

Your Honor should conclude, that the Saddle River Defendants' motion to dismiss should be

granted.  A review of the Plaintiff's claims against the Saddle River Defendants, even accepting

as true all the factual allegations averred by the Plaintiff, leads me to conclude that the Plaintiff

can prove no set of facts to support his claims against them.  Although the Plaintiff reiterates that

the Saddle River Defendants have violated "numerous amendments and a clause of the United

States Constitution . . ." in the section he dedicates to articulating his claims against them, see

Compl. at p.15, ¶4(b), the Plaintiff does not identify which rights these are or how the actions of the Saddle River Defendants have violated those rights.  Alleging that the Saddle River Defendants violated a Court Order, without identifying how that violation infringed upon the Plaintiff's constitutional rights, is too vague to state a claim for relief.  See Martin v. New York State Dep't of Mental Hygiene, 588 F.2d 371, 372 (2d Cir. 1978) (naked assertions, without more, cannot state a claim for relief that can survive a Rule 12(b)(6) motion to dismiss)

Because the Plaintiff's allegations are so vague and conclusory that they "fail to give notice of the basic events and circumstances of which the [P]laintiff complains," id., I conclude, and respectfully recommend that Your Honor should conclude, that his claims against the Saddle River Defendants should be dismissed for failure to state a claim.

B.      Defendant Westchester County

1.      Plaintiff's Claims Against Defendant Westchester County

The Plaintiff makes several allegations against Defendant Westchester County which I construe as consisting of claims that (1) he was deprived of his Fourth Amendment right to be free from unreasonable searches when his medication was seized from him upon being detained subsequent to arrest and that he was deprived of his Fourteenth Amendment due process right to property when Defendant Westchester County lost this medication, (2) he was denied his right to counsel under the Sixth Amendment and his right to equal protection of the laws guaranteed by the Fourteenth Amendment because of the purported "monopoly" Verizon maintains over the phone system used in the Westchester County Correctional facility, and (3) he was deprived of his Fifth and Sixth Amendment rights because he was unable to defend himself against criminal charges filed in New York State Court while he was incarcerated.  See Compl. at pp. 18-21,

¶4(h).

Plaintiff appears to aver additional facts in his Response to Westchester County's Motion to Dismiss that may be construed as an attempt to assert additional claims or amend his original Complaint.  See Docket #31, Response to Westchester County's Motion to Dismiss at pp.1, 6.  In this responsive correspondence, Plaintiff asserts that the alleged deprivation of his medication was a form of coercion employed to force him to agree to a deferred prosecution agreement and that the prison conditions he was subjected to constituted cruel and unusual punishment in light of his alleged medical conditions.  Id.

Despite this liberal reading of the totality of the Plaintiff's submissions to the Court, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff has not stated a claim upon which relief can be granted against Defendant Westchester County. Accordingly, I conclude, and respectfully recommend that Your Honor conclude, that Defendant Westchester County's Rule 12(b)(6) motion to dismiss should be granted in its entirety.

2.    Defendant Westchester County's Motion to Dismiss

As explained, supra, courts will grant a defendant's Rule 12(b)(6) motion to dismiss when the Plaintiff has "fail[ed] to state a claim upon which relief can be granted . . ." see FED. R. CIV. P. 12(b)(6), or when there exists a dispositive issue of law foreclosing the Plaintiff's claims, see Neitzke, 490 U.S. at 326.  When reviewing a motion to dismiss, the Court may only look to the four corners of the Plaintiff's Complaint, any written instrument attached to the Complaint as an exhibit, or any statements or documents incorporated in the Complaint by reference.  See Cortec Industries, Inc., v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (citing to Federal Rule of Civil Procedure 10(c)).  These restrictive rules are intended to protect the Plaintiff and to

ensure that the Plaintiff is not surprised by the averment of new information not previously provided in the motion to dismiss. See Cortec Industries, 949 F.2d at 48.

When the party opposing the motion to dismiss – i.e. the plaintiff – asserts additional information in his or her response to a motion to dismiss, the rule of Cortec Industries remains germane: the Court should neither consider any new information outside of the Complaint, nor any additional documents not attached to the Complaint as exhibits or incorporated by reference. See Cortect Industries, 949 F. 2d at 48. The averment of additional facts by the nonmoving party should not be considered by the Court because, by definition, they are outside of the four corners of the Complaint. See In re Geopharma, Inc., 399 F. Supp. 2d 432, 445 n.100 (S.D.N.Y. 2005) (new facts not appearing in the Complaint should not to be used to assess whether the Complaint itself states a valid claim for relief under Rule 12(b)(6)). Thus, any new arguments the Plaintiff attempts to make in his correspondence opposing Defendant Westchester County's motion to dismiss should not be considered for purposes of assessing whether the Plaintiff has stated a valid claim in his Complaint under Rule 12(b)(6).[7]

a.    Plaintiff's Fourth and Fourteenth Amendment Claims

The first claim Plaintiff attempts to assert against Defendant Westchester County involves a purported illegal seizure of his medication in violation of his Fourth Amendment

---

[7] Even assuming the Court were to consider the new factual allegations the Plaintiff articulates in his correspondence opposing the motion to dismiss, those facts, construed liberally, still do not state a claim for which relief can be sought. See Faulkner v. Beer, 03 Civ. 5284 (GBD), 2005 WL 476976, at *4 n.7 (S.D.N.Y. Feb. 28, 2005) (noting that even if Plaintiff were allowed to amend his Complaint to include new factual allegations, the Complaint would still fail to state a claim for which relief can be granted).

rights to be free from unreasonable searches and seizures.[8]  See Compl. at p. 18, ¶4(h)

("Westchester County Department of Corrections personnel removed plaintiff's medicine

necessary for plaintiff to breath [sic] without any warrant . . . .).  It is clear, however, that upon

the Plaintiff's arrest, the arresting federal officer had the requisite probable cause to search the

Plaintiff's person and seize any items on his person without a warrant.  See, e.g., Chimel v.

California, 395 U.S. 752 (1969).  Moreover, the Second Circuit has applied a "special needs"

exception to the requirement that the police have some degree of individualized suspicion in

order to conduct a warrantless search of a person in the prison setting.  See Roe v. Marcotte, 193

F.3d 72, 78 (2d Cir. 1999).  In Marcotte, the Second Circuit held that although prisoners do not

forfeit all constitutional rights, "the rights they retain are subject to restrictions dictated by

concerns for institutional security, order, and discipline."  Id.  Thus, upon entry into the

correctional facility, the Plaintiff's Fourth Amendment right to be secure in his possessions was

outweighed by the concern for institutional security and order, and Defendant Westchester

County was not required to seek a separate search warrant authorizing the search and seizure of

any items on his person.  Thus, I conclude, and respectfully recommend that Your Honor should

conclude, that Plaintiff's claim of a violation of his Fourth Amendment rights is meritless and

should be dismissed.

    Plaintiff also claims that Defendant Westchester County deprived him of his due process

------

[8] Plaintiff also claims that the seizure of his medication constituted a deprivation of his life, as he was in serious need of the confiscated medication.  See Compl. at p. 19, ¶4(h).  As the Plaintiff is currently alive, and has the capacity to petition this Court for the redress of the alleged deprivations of his constitutional rights in this suit, it is clear that Defendant Westchester County did not deprive the Plaintiff of his life.  The Plaintiff has failed to state a cognizable due process violation for the deprivation of his life, and this claim should be dismissed.

right to property when they seized, and then lost, his medication.  <u>See</u> Compl. at p. 19, ¶4(h).

The Supreme Court has stated clearly that acts of negligence resulting in a due process violation

are insufficient as a matter of law to state a claim for relief; in order to succeed on such a claim,

the Plaintiff must allege either an intentional deprivation of his property, or a reckless act leading

to the loss of his property.  <u>See</u>, <u>e.g.</u>, <u>Daniels v. Williams</u>, 474 U.S. 327 (1986); <u>Davidson v.</u>

<u>Cannon</u>, 474 U.S. 344 (1986).  Additionally, the Plaintiff must identify a municipal policy or

custom that caused the loss of his medication in order to hold Westchester County liable

pursuant to § 1983.  <u>See</u>, <u>e.g.</u>, <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 226 (2d Cir. 2004)

(municipality held liable only for policies and customs giving rise to constitutional claims).  A

liberal reading of the Plaintiff's Complaint demonstrates that the Plaintiff has averred no facts

that could support a finding that Defendant Westchester County acted intentionally or recklessly,

and also acted pursuant to a municipal policy or custom, when it lost the Plaintiff's medication.

Thus, I conclude, and respectfully recommend that Your Honor should conclude, that the

Plaintiff has failed to articulate the bare minimum required to state a claim that Defendant

Westchester County intentionally deprived him of his property in violation of the Fourteenth

Amendment sufficient to survive the instant motion to dismiss.

      b.      Plaintiff's Denial of Right to Counsel and Equal Protection Claims

Separate from his claims that his Fourth and Fourteenth Amendment rights were violated,

the Plaintiff also suggests that both his Sixth Amendment right to counsel and Fourteenth

Amendment right to equal protection of the laws were violated by Defendant Westchester

County when it failed to provide him a free and unmonitored line of communication to his

attorney while in federal pretrial detention.  <u>See</u> Compl. at p. 19-21, ¶4(h).  Plaintiff alleges that

although federal pretrial detainees who were represented by Legal Aid had a direct phone line to their attorneys, he was denied such unimpeded access to his attorney, and that as a result, his Sixth and Fourteenth Amendment rights were violated. Id..

The Sixth Amendment provides in relevant part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Although the Sixth Amendment has been interpreted to provide criminal defendants with the right to the appointment of counsel, see Gideon v. Wainwright, 372 U.S. 335 (1963), and the right to effective assistance of counsel, see Strickland v. Washington, 466 U.S. 668 (1984), the Sixth Amendment has not been construed to provide criminal defendants the right to communicate with their attorneys in the manner they deem best, see Davidson v. Dean, 97 Civ 202 (VM)(HBP), 2000 WL 257148, at *2 (S.D.N.Y. Mar. 7, 2000) (noting that there is no constitutional right to the most effective means of communication with one's attorney). In particular, the Davidson court noted that, similar to the allegations Plaintiff makes in this case, a monitoring system is not a *per se* violation of an individual's right to counsel with his or her attorney. 2000 WL 257148 at *2.

Most importantly, as highlighted by Defendant Westchester County, in order for the Plaintiff to assert a cognizable §1983 civil rights claim, the Plaintiff must (1) suffer some specified injury, and (2) establish that the alleged misconduct of the defendant is the proximate cause of the Plaintiff's injury. See Loria v. Gorman, 306 F.3d 1271, 1287 (2d Cir. 2002) (explaining that proximate cause is a required element in all §1983 claims). In light of prior decisions holding that a monitored phone system is not a *per se* violation of the Sixth Amendment, see Davidson, 2000 WL 257148, at *2, and the Plaintiff's failure to identify any

specific injury linked to the alleged deprivation of his Sixth Amendment right to counsel, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant Westchester County's motion to dismiss the Plaintiff's Sixth Amendment claim under Rule 12(b)(6) should be granted.

In addition to his Sixth Amendment claim, Plaintiff suggests that "[people] being held in pretrial detention with federal charges pending who were represented by Legal Aid attorneys had a dedicated phone line permitting them to contact their attorneys, an option barred to those held in federal pretrial detention . . . ." <u>See</u> Compl. at p. 19, ¶4(h). Ostensibly, it is this divergent treatment that serves as the basis for the Plaintiff's equal protection claim.

When asserting an equal protection violation, the Plaintiff must prove that: (1) compared with others similarly situated, he was treated differently, and (2) such selective treatment was based upon an impermissible consideration, such as race, religion, an intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. <u>Diesel v. Town of Lewisboro</u>, 232 F.3d 92, 103 (2d Cir. 2000) (citations omitted). It is the Plaintiff's burden of proof to establish that the person or persons he seeks to compare himself with are "similarly situated in all material respects." <u>Graham v. Long Island Rail Road</u>, 230 F.3d 34, 39 (2d Cir. 2000).

Although Plaintiff may feel that he is entitled to the same communications system provided to criminal defendants represented by Legal Aid, the fact that the Plaintiff privately retained counsel, by definition distinguishes him from other federal pretrial detainees. The Plaintiff, therefore, cannot establish that he is "similarly situated in all material respects," to the other federal pretrial detainees who were represented by Legal Aid. <u>Graham</u>, 230 F.3d at 39

Moreover, the Plaintiff has made no effort to identify the invidious motive behind Defendant Westchester County's alleged deprivation of the Plaintiff's Sixth Amendment right to counsel.

Thus, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant Westchester County's motion to dismiss Plaintiff's Sixth and Fourteenth Amendment claims stemming from the "arbitrary and capricious," Compl. at p. 19, ¶4(h), design of the phone system within the Westchester County correctional facility be granted.

### c. Plaintiff's Denial of Right to Defend Himself Against State Criminal Charges

Lastly, Plaintiff argues that the unconstitutional communication system maintained by Defendant Westchester County caused the Plaintiff to endure a state court criminal proceeding longer than necessary because he was unable to communicate with his attorney. See Compl. at p. 20-21, ¶4(h). In making this argument, Plaintiff claims that his Fifth and Sixth Amendment rights were violated. See Compl. at p. 21, ¶4(h). As Plaintiff does not endeavor to provide Defendant Westchester County, or the Court, with any additional clarity beyond this tautological statement, I conclude, and respectfully recommend that Your Honor conclude, that Defendant Westchester County's motion to dismiss for failure to state a claim under Rule 12(b)(6) be granted. Absent a more concrete assertion identifying which of his Fifth and Sixth Amendment rights were purportedly violated, Defendant Westchester County is unable to defend itself against these nonspecific assertions. Martin, 588 F.2d at 372. Accordingly, Defendant Westchester County's motion to dismiss the alleged Fifth and Sixth Amendment violations should be granted.

### 3. Summary

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor

should conclude, that the Plaintiff's Complaint as to Defendant Westchester County should be dismissed in its entirety.

C.     <u>Orange County Defendants</u>

Although they are grouped together as the "Orange County Defendants," the Plaintiff asserts distinct factual allegations against each of the individuals and municipal officers that compose the Orange County Defendants. The Plaintiff has not specified whether he is suing any of the individual Orange County Defendants in their personal capacities, official capacities, or both. <u>See</u> Compl. at p. 15 – 18, ¶¶4(c) – (g). Because of Plaintiff's *pro se* status, and the case law of Second Circuit, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff's Complaint should be construed as asserting claims against each of the individual Orange County Defendants in both their personal capacities and their official capacities. <u>See</u> <u>Ying Jing Gan v. The City of New York</u>, 996 F.2d 522, 529-30 (2d Cir. 1993).[9]

---

[9] In their Memorandum of Law, the Orange County Defendants cite to <u>Ying Jing Gan</u> for the proposition that "the court . . . should look to the 'course of the proceedings' " to determine whether the Plaintiff intended to sue the defendants in their official capacities, personal capacities, or both. <u>See</u> Docket #21, Memorandum of Law at p. 12.

Although <u>Ying Jing Gan</u> suggests that the Court should "look to the course of the proceedings" to discern what capacity a plaintiff intends to sue a defendant, the <u>Ying Jing Gan</u> Court also explained that it was "more appropriate for the [district] court to allow the case to proceed against the officials in their individual capacities, requiring, if appropriate, an amendment to provide greater notice to the defendants." 996 F.2d at 530.

In light of the Plaintiff's *pro se* status, and the nature of his allegations, it would be improper to construe the Complaint against the Plaintiff and presume that he intended to sue each of the Orange County Defendants only in their official capacities. As the distinction between personal and official capacity suits has produced an abundance of case law, <u>see</u>, <u>e.g.</u>, <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985) ("[personal and official capacity] distinction[s] apparently continue[] to confuse lawyers and confound lower courts . . ."), it would be against the liberal *pro se* standard of <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), to presume that the Plaintiff made a calculated decision to sue each of the Orange County Defendants only in their official capacities. Moreover, the Plaintiff's Complaint is replete with references to absolute and qualified immunity, doctrines that are applicable to defendants only when sued in their personal

24

A suit against an individual in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which [the] officer is an agent." Graham, 473 U.S. at 165 (quoting Monell v. New York City Department of Social Services, 436 U.S. 658, 690 n.55 (1978)). Accordingly, in order for the Plaintiff to state a valid claim against each of the Orange County Defendants in his or her official capacity, the Plaintiff must comply with the dictates of Monell and its progeny. See, e.g., Board of the County Commissioners of Bryan County v. Brown, et al., 520 U.S. 397, 403-04 (1997) (summarizing the elements of a Monell claim against a municipality in a §1983 cause of action). As the Orange County Defendants have only argued that the Plaintiff has sued them in their official capacities, and offer no argument as to the Plaintiff's Complaint against them in their personal capacities, the undersigned will not examine whether any of the Orange County Defendants are entitled to qualified immunity on any of the Plaintiff's claims that I recommend survive the instant motion to dismiss. See Graham, 473 U.S. at 166-67 (noting that only when a defendant is sued in his or her personal capacity may he or she be entitled to the protections of either absolute or qualified immunity); see also Owen v. City of Independence, 445 U.S. 622, 638 (1980) (stating that a municipality may not assert a qualified immunity defense). Issues involving the individual defendants' entitlement to qualified immunity in their respective personal capacities could be raised by the Orange County Defendants, if appropriate, in a subsequent motion for summary judgment.

    1.      Defendant Timothy Conway, Orange County Sheriff's Department and the Orange County Sheriff's Department

---

capacities.

a.     Plaintiff's Claims Against Defendant Conway in His Personal Capacity

In his claim against Defendant Timothy Conway (herein, "Defendant Conway"), Plaintiff asserts that Defendant Conway failed to inspect the records of the New Jersey municipalities neighboring Saddle River, New Jersey prior to charging the Plaintiff with two counts of filing a false instrument in the first degree under N.Y. PENAL LAW § 175.35. See Compl. at pp. 15-16, ¶4(c)("... Timothy Conway still was guilty of gross negligence in not checking the files in Hackensack, Bergen County, New Jersey, a short car ride away, to confirm that plaintiff was convicted of a crime in Bergen County, New Jersey . . . ."). Plaintiff also maintains that Defendant Conway was grossly negligent in failing to verify whether the Plaintiff held a "New York State license;" Plaintiff submits that he would not be able to hold such a license if he had been convicted of a crime, and that had Defendant Conway researched such an issue, he would have had to conclude that the Plaintiff was not convicted of a crime. Id. Plaintiff argues that as a result of these improprieties, Defendant Conway deprived him of his First, Fourth and Fifth Amendment rights, as well as his rights under the Privileges and Immunities Clause of the United States Constitution. Id.

b.     Defendant Conway's Motion to Dismiss

i.     Plaintiff's First Amendment Claim Against Defendant Conway

Plaintiff first asserts that Defendant Conway initiated New York State criminal proceedings in an effort to deprive him of his First Amendment rights. See Compl. at p. 16, ¶4(c). The First Amendment provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a

redress of grievances." U.S. CONST. amend. I.  As the Plaintiff fails to supply any specific allegation as to how Defendant Conway's alleged failure to verify the veracity of the Plaintiff's criminal background – or absence thereof – violated his First Amendment rights, the Plaintiff's claim of a First Amendment violation should be dismissed for failure to state a claim.

ii.    Plaintiff's Fourth and Fifth Amendment Claims Against Defendant Conway

Plaintiff also argues that Defendant Conway's failure to verify the propriety of the information he received about the Plaintiff's criminal background deprived the Plaintiff of his Fourth and Fifth Amendment rights.  See Compl. at p. 16, ¶4(c).  Plaintiff does not articulate with any specificity how either his Fourth or Fifth Amendment rights were violated.  The Court is left to speculate that the Plaintiff asserts a due process violation under the Fifth and Fourteenth Amendments and common law Fourth Amendment tort claims.

a.    Plaintiff's Fourth Amendment Tort Claims

In order for a common law tort to be actionable under §1983, it must implicate a federal constitutional or statutory right.  See Cook v. Sheldon, 41 F.3d 73, 77 (2d Cir. 1994).  The common law torts of false arrest, malicious prosecution and abuse of process have each been held to be actionable under §1983.  Id.  For the following reasons, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant Conway's motion to dismiss the Plaintiff's Fourth Amendment common law tort claims should be denied.

In order to successfully state a claim for false arrest under New York law, the Plaintiff must establish that : "(1) the defendant intended to confine [the plaintiff]; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." Singer v. Fulton County Sheriff, 63 F.3d 110, 118

(2d Cir. 1995). Probable cause is a complete defense to a claim of false arrest, <u>Bernard v. United States</u>, 25 F.3d 98, 102 (2d Cir. 1994), and the burden is on the defendant to establish the existence of probable cause as an affirmative defense, <u>Broughton v. State of New York, et al.</u>, 37 N.Y.2d 451, 458 (1975). Similarly, a claim of malicious prosecution under New York law includes the following elements: "(1) the defendant commenced or continued a criminal proceeding against the plaintiff; (2) the proceeding terminated in the plaintiff's favor; (3) there was no probable cause for the criminal proceeding; and (4) the defendant initiated the criminal proceeding out of malice." <u>Bernard</u>, 25 F.3d at 104.

I conclude, and respectfully recommend that Your Honor should conclude, that a determination as to whether Defendant Conway acted pursuant to valid probable cause cannot be made at this time. As explained, <u>supra</u>, both the claims of false arrest and malicious prosecution involve assessments of whether a defendant acted pursuant to valid probable cause. <u>See</u> <u>Singer</u>, 63 F.3d at 117 (action of malicious prosecution lies when a legal prosecution has been instituted without probable cause); <u>see</u> <u>id.</u> at 118-19 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.") (citing <u>Bernard</u>, 25 F.3d at 102). Probable cause is based upon a review of the totality of the circumstances as presented to the arresting officer at the time of the arrest. <u>See</u> <u>Illinois v. Gates</u>, 462 U.S. 213, 203 (1982). Specifically, "[p]robable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." <u>Singer</u>, 63 F.3d at 119 (citations omitted).

In this case, however, Defendant Conway has not carried his burden of proving he acted

pursuant to valid probable cause to defeat the Plaintiff's claims of false arrest and malicious prosecution at this stage of the proceedings. Defendant Conway only asserts that his actions were reasonable in light of the information he received from "a criminal background check from New Jersey contain[ing] information reflecting that [the] Plaintiff had a prior criminal history." See Docket #21, Memorandum of Law at p.21. Defendant Conway posits that this information contradicted information Plaintiff supplied in his application for employment with Orange County, see Docket #20, Notice of Motion, Ex. B, Plaintiff's Application for Employment, and that it was "readily apparent that the elements of Penal Law section 175.35 were met[,] or at the very minimum, reasonably believed to have been met." Docket #22, Memorandum of Law at p.22.

Defendant Conway's argument, however, raises questions more than it provides answers. Defendant Conway does not explain how he came to know of the contents of the Plaintiff's employment application, which he argues served as the basis of his probable cause finding. Defendant Conway also does not explain whether he sought a warrant for the Plaintiff's arrest, or effectuated a warrantless arrest based upon his personal determination of probable cause. Because of the absence of evidence that could establish that Defendant Conway acted pursuant to valid probable cause, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff has stated a claim for false arrest and malicious prosecution against Defendant Conway that can survive the instant motion to dismiss.[10]

_____

[10] It is also unclear to the undersigned at this time whether Defendant Conway's reliance on the criminal background check from New Jersey itself was reasonable. In her concurring opinion in Evans v. Arizona, 514 U.S. 1, 16-17 (1995), Justice O'Connor intimated that the manner in which a police officer relies on a record keeping system may supply the basis of a Fourth Amendment challenge to the reasonableness of a police officer's actions. The Second

Differing from his false arrest and malicious prosecution claims, Plaintiff does not allege the requisite facts needed to establish an abuse of process claim against Defendant Conway.  In order to state a claim for abuse of process, the Plaintiff must establish (1) the use of the legal process to compel performance or forbearance of some action, (2) with the intent to do harm without excuse of justification, (3) in order to obtain a collateral objective outside the legitimate ends of the process.  See Cook, 41 F.3d at 80.  Historically, the tort of abuse of process was considered "obscure," see Board of Education of Farmingdale Union Free School District v. Farmingdale Classroom Teachers Association, Inc., 38 N.Y.2d 397, 400 (1975), and a close cousin to the tort of malicious prosecution, Mormon v. Baran, 35 N.Y.S.2d 906, 908 (Sup. Ct. 1961).  Whereas the gravamen of a malicious prosecution claim is that the defendant maliciously uses the legal process without justification or proper motive, an abuse of process claim arises when the defendant causes legal process to issue for an unjustified collateral purpose.  See Savino v. City of New York, 331 F.3d 63, 77 (2d Cir. 2003) (abuse of process claim based upon improper purpose for instituting legal process); see also Hauser v. Bartow, 273 N.Y. 370, 374

_____

Circuit has expounded upon this suggestion, see United States v. Santa, 180 F.3d 20, 27-28 (2d Cir. 1999), and has examined whether a police officer's reliance on a computer entry which reported inaccurate information was itself objectively reasonable.

The undersigned is mindful that the decisions in Evans and Santa both address whether the good faith exception to the exclusionary rule, which was articulated in Mapp v. Ohio, 367 U.S. 643 (1961), was appropriate, and that the Supreme Court has explained on a number of occasions that the issue of whether there was a Fourth Amendment violation is analytically distinct from the issue of whether an exception to the exclusionary rule should apply, see Evans, 514 U.S. at 6 n.1 (noting that the issue of whether a Fourth Amendment violation occurred was conceded and not addressed on review); see also id. at 10 (explaining that whether there was a Fourth Amendment violation and whether the exclusionary rule should apply are separate issues).  It is because the contours of when a police officer may reasonably rely on information produced from a record keeping system are undefined that I also respectfully recommend that a determination that Defendant Conway acted pursuant to valid probable cause cannot be made at this time.

(1937) ("As soon as the actor uses the process of the court, not to effect its proper function, but to accomplish *through it* some collateral object, [he or she] commits [the tort of abuse of process].") (emphasis in original).

I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff does not state a claim for abuse of process because he fails to identify the impermissible collateral objective that Defendant Conway intended to achieve through the use of the court's process when he arrested and initiated the prosecution of the plaintiff for violations of N.Y. PENAL LAW § 175.35. See Williams v. Williams, 23 N.Y.2d 592, 596 n.1 (1969) (identifying a criminal prosecution as a form of judicial process that could substantiate a claim of abuse of process); see also Board of Education of Farmingdale Union Free School District, 38 N.Y.2d at 404 (listing blackmail or retribution as possible impermissible collateral objectives that could substantiate an abuse of process claim). Absent some averment to this effect, the Plaintiff cannot state a claim for relief for an abuse of process under §1983.

b.      Plaintiff's Fifth Amendment Claims

Plaintiff argues that Defendant Conway initiated New York State criminal charges against him in an effort to deprive him of his Fifth Amendment rights. See Compl. at p. 16, ¶4(c). Presumably, Plaintiff asserts a due process violation under the due process clauses of the Fifth and Fourteenth Amendments. As Plaintiff fails to identify whether he is asserting a procedural or substantive due process claim, I will analyze both potential claims.

If the Plaintiff intended to assert a substantive due process claim against Defendant Conway, I conclude, and respectfully recommend that Your Honor should conclude, that the motion to dismiss should be granted. The Supreme Court has held that "if a constitutional claim

is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n.2 (1997); see also County of Sacramento v. Lewis, 523 U.S. 833, 843-44 (1998) (explicitly applying the reasoning of Lanier and holding that a claim for an illegal search is better analyzed under the Fourth Amendment rather than substantive due process). Because the Plaintiff alleges that Defendant Conway initiated the New York State criminal charges without "any basis in fact," such a claim is better analyzed under the Fourth Amendment than under the rubric of substantive due process. See Bryant v. City of New York, 404 F.3d 128, 136 (2d Cir. 2005) (reasoning that a claim for wrongful arrest should be brought under §1983 as a violation of the Fourth Amendment, not as a violation of substantive due process). Accordingly, I conclude, and respectively recommend that Your Honor should conclude, that the motion to dismiss the substantive due process claim should be granted.

Similarly, if the Plaintiff intended to assert a claim of a violation of procedural due process, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff has failed to state a claim for relief that withstands Defendant Conway's motion to dismiss. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Carey v. Piphus, 435 U.S. 247, 259 (1978). Although Plaintiff believes his physical freedom – i.e. his liberty – was wrongfully deprived when he was arrested on state criminal charges, Plaintiff was given a hearing to challenge the validity of that deprivation. Thus, the requirements of procedural due process were honored: Plaintiff had a meaningful opportunity to challenge the charges brought

against him in court.  <u>See</u> Compl. at p. 16, ¶4(c) (". . . charges . . . found by a New York State court of having no basis in fact and which were dismissed as a matter of law."); <u>see also</u> <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976) (fundamental element of procedural due process is meaningful opportunity to be heard); <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950) (same).  Any claims Plaintiff may have challenging the propriety of the state law criminal charges initiated by Defendant Conway are better analyzed under the rubric provided by the common law causes of action under the Fourth Amendment discussed <u>supra</u>, not the Due Process Clause of the Fourteenth Amendment.

Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff's procedural due process claims under the Fifth and Fourteenth Amendment against Defendant Conway be dismissed.

iii.     Plaintiff's Privileges and Immunities Clause Challenge

Lastly, Plaintiff argues that Defendant Conway violated his rights under the "Privileges and Immunities Clause of the Constitution . . . ."  <u>See</u> Compl. at p. 16, ¶4(c).  Contrary to some of the Plaintiff's other amorphous assertions, Plaintiff states that the rights provided to him under the Constitution's Privileges and Immunities clause were violated.  <u>Id.</u>  Considering the confusing nature of the jurisprudence on the privileges and immunities clause, and the fact that there are two separate clauses that employ the phrase "privileges and immunities," I will analyze any potential claim the Plaintiff has under either the Privileges and Immunities Clause of Article Four, Section Two, Paragraph One, or the Privileges and Immunities Clause of the Fourteenth Amendment.

Article Four, Section Two, Paragraph One of the United States Constitution states, "The

Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  Historically, this provision has been interpreted as "prevent[ing] a State from discriminating against citizens of other States in favor of its own." Hague v. Committee for Industrial Organization, 307 U.S. 496, 511 (1939).  Thus, typical challenges arising under the Privileges and Immunities Clause of Article IV involve a citizen of one state challenging the actions of another state on the grounds that such actions infringe the rights of out-of-state citizens.  See, e.g., Hillside Dairy, Inc., v. Lyons, 539 U.S. 59, 67 (2003) (permitting a challenge to a California program regulating the minimum price paid to California milk producers brought by non-California residents to go forward under the Privileges and Immunities Clause, Article Four, Section Two, Paragraph One); see also Lunding v. New York Tax Appeals Tribunal, 522 U.S. 287 (1998) (invalidating a New York State tax provision allowing New York residents, but not non-New York residents, to take an income tax deduction for alimony expenses on the amount of their gross income subject to New York state income tax).

In light of the fact that the Plaintiff is a New York state resident, and that Defendant Conway is a member of the Orange County Sheriff's Department, which is located in New York, there is no cognizable claim the Plaintiff could assert under the Article IV Privileges and Immunities Clause against Defendant Conway.  Accordingly, I conclude, and respectfully recommend that Your Honor conclude, that the Plaintiff's Article IV Privileges and Immunities Clause assertions be dismissed for failure to state a claim.

In addition to the Privileges and Immunities Clause of Article IV, the Fourteenth Amendment also contains language referring to the "privileges and immunities of citizens of the United States."  See U.S. CONST. amend XIV § 1.  Differing from the Privileges and Immunities

Clause of Article IV, which is invoked with some regularity in constitutional litigation, the privileges and immunities clause of the Fourteenth Amendment is invoked less frequently. <u>See</u>, <u>e.g.</u>, <u>The Slaughter-House Cases</u>, 83 U.S. 36, 71-72 (1872) (holding that the Thirteenth and Fourteenth Amendments were only intended to protect former slaves and to provide them equality under the law, and were not to restate rights already guaranteed to United States citizens by other provisions of the Constitution and Bill of Rights). Similar to Article IV's Privileges and Immunities provision, in order to state a colorable Fourteenth Amendment Privileges and Immunities claim, the Plaintiff must allege that his fundamental rights were infringed upon because of his state citizenship. <u>See</u> <u>Saenz v. Roe</u>, 526 U.S. 489, 510-11 (1999) (holding that a California law limiting welfare benefits to new residents of the state violated the new residents' fundamental right to travel under the privileges and immunities clause of the Fourteenth Amendment); <u>see</u> <u>also</u> <u>Bach v. Pataki</u>, 408 F.3d 75, 89 n.27 (2d Cir. 2005) (explaining the legal standards for challenging a law under the Fourteenth Amendment's Privileges and Immunities Clause).

As both the Plaintiff and Defendant Conway are from New York, the Plaintiff has no colorable Fourteenth Amendment Privileges and Immunities claim. Thus, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant Conway's motion to dismiss for failure to state a claim as to the alleged violation of the Plaintiff's rights guaranteed by the privileges and immunities clause should be granted.

iv.    Summary

As Plaintiff has articulated claims against Defendant Conway in his personal capacity for false arrest and malicious prosecution, and as Defendant Conway has asserted no qualified

immunity defense, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's false arrest and malicious prosecution claims should survive the instant motion to dismiss and that the other claims the Plaintiff makes against Defendant Conway in his personal capacity should be dismissed for failure to state a claim.  I also conclude, and respectfully recommend that Your Honor should conclude, that the claims asserted against Defendant Conway in his official capacity should be dismissed as a matter of law for failing to comply with the Supreme Court's holding in <u>Monell</u> and its progeny as the Plaintiff has advanced no argument that Defendant Conway acted pursuant to a policy or custom, <u>see</u> <u>Monell</u>, 436 U.S. at 694, or that Defendant Conway is a final decision maker whose actions could be imputed to Orange County under <u>Monell</u>, <u>see</u> <u>Brown</u>, 520 U.S. at 404 (citing <u>Monell</u>, 436 U.S. at 694) (policy of municipality may be established by actions of individual with final decision making authority).  Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that the claims against Defendant Conway in his official capacity should be dismissed in their entirety for failure to state a <u>Monell</u> claim.

     2.    <u>Defendant Catherine Bartlett, Office of Legal Counsel, County of Orange and the Office of Legal Counsel</u>

     a.    Plaintiff's Claims Against Defendant Bartlett in Her Personal Capacity

In his allegations against Defendant Catherine Bartlett, formerly of the Office of Legal Counsel (herein, "Defendant Bartlett"), Plaintiff claims that Defendant Bartlett terminated Plaintiff's employment with the Orange County Department of Health "before the initial charges for which plaintiff had been arrested had been determined for probable cause in open court . . . ."  <u>See</u> Compl. at p. 16, ¶4(d).  Subsequent to this allegation, however, Plaintiff concedes that "Catherine Bartlett clearly could have dismissed plaintiff for no cause given plaintiff was at that

point a provisional employee . . . ." Id.  Thus, the gravamen of the Plaintiff's cause of action

against Defendant Bartlett appears to focus on statements the Plaintiff alleges she made to the

media regarding his termination from employment, and also focuses on the actions she took to

prevent the Plaintiff from "examining the property still left in his desk . . . ." Id.  Plaintiff

contends these actions violated his "constitutional rights to property and his professional

reputation," and asserts that Defendant Bartlett's actions violated his Fifth and Fourteenth

Amendment rights.  Id.  Based upon the Plaintiff's admission that Defendant Bartlett "could

have dismissed [the] plaintiff for no cause," see Compl. at p. 16, ¶4(d), Plaintiff's deprivation of

property claim is based presumably upon the alleged deprivation of his personal property in his

office desk, not the termination of his employment.[11]  Thus, I conclude, and respectfully

recommend that Your Honor should conclude, that the Plaintiff's claims against Defendant

Bartlett are based upon alleged deprivations of his personal property and of his professional

reputation.

      b.     Defendant Bartlett's Motion to Dismiss

          i.     Plaintiff's Deprivation of Personal Property Claim

Plaintiff maintains in his Complaint that Defendant Bartlett "prevented [Plaintiff] from

examining the property still left in his desk . . .," presumably in violation of the Fifth and

Fourteenth Amendments' due process guarantees.  See Compl. at p. 16, ¶4(d).  Although there

---

[11] An individual may hold a cognizable property interest in a position of government
employment, which is protected by the due process clause, when that individual is entitled to the
position of employment.  See, e.g., Board of Regents, et al., v. Roth, 408 U.S. 564 (1972).  As
Plaintiff admits he was a provisional employee who could be terminated from employment
without cause, the Plaintiff has no colorable property interest in his position of employment
subject to the protections of the due process clause of the Fourteenth Amendment.

exists a lower threshold to justify the search and seizure of property at one's workplace – a standard of reasonableness as opposed to probable cause, see, e.g., Shaul v. Cherry Valley-Springfield Cent. School, 363 F.3d 177, 184 (2d Cir. 2004) (summarizing pertinent case law) – the Plaintiff still has a cognizable property interest in his personal property, and the eventual return of that property, id. at 187 (citing United States v. David, 131 F.3d 55, 59 (2d Cir. 1997)). In Shaul, the Second Circuit suggested that a challenge to the government's extended possession of personal property subsequent to its seizure should be articulated as a procedural due process claim, not a Fourth Amendment claim. Id. Plaintiff appears to have followed this directive by challenging the alleged retention of his personal property under the due process clauses of the Fifth and Fourteenth Amendments, not the Fourth Amendment. See Compl. at p. 16, ¶4(d).

As explained, supra, however, a procedural due process claim based upon a deprivation of property cannot be supported by claims of negligence alone; the Plaintiff must allege some willful act on the part of the Defendant leading to the deprivation of his property. See, e.g., Daniels v. Williams, 474 U.S. 327 (1986); Davidson v. Cannon, 474 U.S. 344 (1986) (negligence, alone, insufficient to state a claim for a procedural due process violation for unconstitutional deprivation of property). Although it is debatable whether Plaintiff alleges this intent element sufficiently, see Compl. at p. 16, ¶4(d) ("Catherine Bartlett prevented plaintiff Terry Hughes from examining the property still left in his desk in order to prevent plaintiff from his right to defend himself in open court . . . ."), I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff implies that Defendant Bartlett's actions were motivated by an animus toward the exercise of his constitutional rights and thus were intentional acts within the meaning of Daniels and Davidson. Id.

Complying with the directives offered in Daniels and Davidson, however, is only half of what the Plaintiff must establish in order to state a colorable procedural due process claim. The Plaintiff must also allege that the state deprived him of his property interest without due process of law. See U.S. CONST. amend XIV § 1. Depending on the source of the deprivation, a complainant may be entitled to either a pre-deprivation hearing or a post-deprivation hearing, and if the Plaintiff were provided neither, the Plaintiff would have the necessary predicate to assert a procedural due process claim. See Velez v. Levy, 401 F.3d 75, 91 (2d Cir. 2005)

"The Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based upon random, unauthorized acts by state employees." Hellenic American Neighborhood  Action Committee v. The City of New York, 101 F.3d 877, 880 (2d Cir. 1996) (citing Hudson v. Palmer, 468 U.S. 517 (1984). When the deprivation is at the hands of a state employee, and not based upon state procedures, "pragmatic considerations" counsel that the due process clause is not violated so long as the state provides a meaningful postdeprivation remedy. Id. The Second Circuit has explained that "an Article 78 proceeding is a perfectly adequate postdeprivation remedy" to address allegations of property and liberty deprivations at the hands of state employees. See Hellenic American, 101 F.3d at 880-81. This clear pronouncement holds true in the present case and is not effected if the Plaintiff did not avail himself of an Article 78 proceeding. Id. at 881 ("[Plaintiff] was not deprived of due process simply because [it] failed to avail [itself] of the opportunity [to commence an Article 78 proceeding].") (citing Giglio v. Dunn, 732 F.2d 1133, 1135 n.1 (2d Cir. 1984)).

As "there is no constitutional violation (and no available § 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property

or liberty," Hellenic American, 101 F.3d at 881, the Plaintiff is unable to state a claim for relief for a procedural due process violation based upon the deprivation of his personal property. Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant Bartlett's motion to dismiss Plaintiff's allegations of a procedural due process violation against her in her personal capacity should be granted.

    ii.  Plaintiff's Deprivation of Liberty Claim

   Plaintiff also argues that Defendant Bartlett deprived him of his "constitutional rights to [his] . . . professional reputation" when she publicized the fact that he was being terminated from employment with the Orange County Department of Health. See Compl. at p. 16, ¶4(d). A claim involving a purported deprivation of one's liberty interest in his or her reputation should be analyzed as a procedural due process "stigma-plus" deprivation of liberty claim. See, e.g., Velez, 401 F.3d at 87-88.

   In order for the Plaintiff to maintain a valid "stigma-plus" claim based upon the deprivation of his liberty interest in his reputation, the Plaintiff must first establish that he (1) possessed a cognizable liberty interest and (2) that he was deprived of his interest in his reputation without the requisite due process. Velez, 401 F.3d at 87 (citing DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003)). When establishing the existence of a colorable liberty interest for the purposes of a "stigma-plus" claim, the Plaintiff must allege the existence of a declaration about him that is injurious to his reputation that may be disproved or that he claims is false, and also must allege some state-imposed burden on him in addition to the stigmatizing statement. Id. (quoting Doe v. Dep't of Public Saftey ex rel. Lee, 271 F.3d 3.8, 47 (2d Cir. 2001), rev'd on other grounds, Conn. Dep't of Public Saftey v. Doe, 538 U.S. 1 (2003)). The

Second Circuit has held that the "additional state-imposed burden" that can transform an otherwise meritless claim of defamation into an actionable constitutional claim for a deprivation of liberty under §1983 is the loss of employment.  Id. at 88 (citing Siegert v. Gilley, 500 U.S. 226 (1991)).

A review of the Plaintiff's Complaint leads me to conclude, and respectfully recommend that Your Honor should conclude, that the Defendant's motion to dismiss the Plaintiff's stigma-plus procedural due process claim should be granted for the same reasons that I recommend that the motion to dismiss the Plaintiff's property deprivation claim should be granted.  As the Plaintiff was entitled to commence an Article 78 proceeding challenging the statements made by Defendant Bartlett that he believes amount to an impermissible deprivation of his liberty interest in his reputation, the Plaintiff cannot state the bare minima needed to establish a credible procedural due process claim.  See Hellenic American, 101 F.3d at 881 (where a postdeprivation remedy, like Article 78, is available, there can be no claim of a procedural due process violation for either a deprivation of property or liberty).  Thus, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff's assertions complaining of an infringement of his professional reputation in violation of the Fourteenth Amendment's procedural due process guarantee should be dismissed.

c.  Claims Against Defendant Bartlett in her Official Capacity

As I have concluded that Plaintiff has failed to state a claim against Defendant Bartlett in her personal capacity, there is no constitutional violation that could be imputed to Orange County under Monell that could state a claim for relief under § 1983.  Assuming, *arguendo*, that

the Plaintiff's allegations could establish a claim that could survive the instant motion to dismiss, the Plaintiff has failed to allege that Defendant Bartlett was operating pursuant to a municipal policy or custom, or that Defendant Bartlett was a final decision maker who could set policy for Orange County. See Monell, 436 U.S. at 690-91. Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff's allegations fail to state a claim under Monell, and that the motion to dismiss the Complaint as to Defendant Bartlett in her official capacity should be granted.

      3.    <u>Defendant Edward Diana, Orange County Executive and Orange County</u>

      a.    Plaintiff's Claims Against Defendant Diana in his Personal Capacity

In a synthesis of allegations, Plaintiff alleges that Defendant Edward Diana, Orange County Executive (herein, "Defendant Diana") failed to investigate the propriety of the federal and state criminal charges brought against him prior to terminating him from his position of employment, and that Defendant Diana announced prematurely that the Plaintiff was being terminated from his position of employment with the Orange County Department of Health. Plaintiff concludes that Defendant Diana deprived him of his rights under the "Fourth and Fifth Amendments to the Constitution and the Privileges and Immunities Clause of the Constitution." See Compl. at p. 17, ¶4(e).

      b.    Defendant Diana's Motion to Dismiss

      i.    Plaintiff's Fourth Amendment Claims

Dissimilar from his allegations against Defendant Conway, who arrested the Plaintiff for filing a false statement pursuant to N.Y. PENAL LAW § 175.35, Plaintiff does not allege that

Defendant Diana, as the County Executive of Orange County, was involved in the decision making process to arrest him or charge him with violations of state law. <u>See</u> Compl. at p. 17, ¶4(e). As the Plaintiff has only named the rights he believes Defendant Diana violated, and has not provided the Court with any allegations supporting his claim of a Fourth Amendment right – specifically, how Defendant Diana was personally involved in any alleged Fourth Amendment violation – I conclude, and respectfully recommend that Your Honor should conclude, that "the plaintiff can prove no set of facts in support of his claim" of a Fourth Amendment violation against Defendant Diana that would entitle him to relief. <u>See</u> <u>Harris v. City of New York</u>, 186 F.3d 243, 247 (2d Cir. 1999). In support of this conclusion, I note for Your Honor that Plaintiff has offered no "specific allegations establishing" Defendant Diana's personal involvement in the alleged Fourth Amendment deprivations that would subject Defendant Diana to personal liability under § 1983 in his personal capacity. See <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (annunciating ways to establish personal involvement of a defendant for § 1983 purposes and explaining that the personal involvement of defendant is a prerequisite to an award of damages in §1983 action).

ii.      Plaintiff's Privileges and Immunities Clause Claim

Similarly, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff's allegations that Defendant Diana violated his rights under the Privileges and Immunities Clause of the United States Constitution, the Fourteenth Amendment, or both, for the same reasons articulated, <u>supra</u>, are meritless and should be dismissed.

### iii. Plaintiff's Fifth Amendment Claim[12]

Plaintiff's claim of a Fifth Amendment violation is based arguably upon his assertion that he was deprived of his liberty interest in his professional reputation when Defendant Diana "failed to investigate the basis for any charges against [the] plaintiff prior to publicizing that charges would be brought against the plaintiff . . . ." See Compl. at p. 17, ¶4(e). Although a postdeprivation remedy is appropriate when the deprivation is based upon "claims . . . [of] random, unauthorized acts by state employees," Hellenic American, 101 F.3d at 880, "post-deprivation remedies do not suffice where the government actor in question is a high ranking official with final authority over significant matters." Velez, 401 F.3d at 91-92 (quoting DiBlasio v. Novello, 344 F,3d 292, 302 (2d Cir. 2003)). The Second Circuit grounded this assessment in the recognition that "the state acts through its high-level officials [and] that the decisions of these officials more closely resemble established state procedures that the haphazard acts of individual state actors that the Hellenic American exception was designed to cover." DiBlasio, 344 F.3d at 303. Both the DiBlasio and Velez courts noted that high-level officials were characterized by the quantum of authority they had to suspend or to remove an employee from his or her position of employment. See Velez, 401 F.3d at 92 (citing DiBlasio, 344 F.3d at

---

[12] The Fifth Amendment's due process clause only applies to the federal government, and the Fourteenth Amendment's due process clause applies to the states. See, e.g., Bolling v. Sharpe, 347 U.S. 497 (1954). In light of the tenor of the Plaintiff's Complaint, which suggests that the Plaintiff intended to assert a due process claim, the fact that the Plaintiff argues that Defendant Diana, a state actor, violated the Fifth Amendment, and not the Fourteenth Amendment, should be overlooked. The Plaintiff's claim of a due process violation should be construed as asserting a Fourteenth Amendment procedural due process violation, not a Fifth Amendment procedural due process claim. See, e.g., Newman v. Silver, 713 F.2d 14, 15, n.1 (2d Cir. 1983) ("nature of federal pleading . . . is by statement of claim, not by legal theories.") (citations omitted); Mid American Title Co v. Kirk, 991 F.2d 417, 421 (7th Cir. 1993) (incorrect label in Complaint not fatal to underlying cause of action).

304).

Defendant Diana, as the County Executive of Orange County, is alleged to have "set policy for the executive branch of Orange County," see Compl. at p. 17, ¶4(e), thus I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff has stated a colorable procedural "stigma-plus" procedural due process claim against Defendant Diana for statements he allegedly made to the media concerning the Plaintiff's termination from employment with the Orange County Department of Public Health, and that the Plaintiff was entitled to some form of a predeprivation hearing before Defendant Diana allegedly publicized statements about him to the media. Consideration of whether the Plaintiff received an adequate predeprivation hearing "depends on facts which may or may not be contested and is governed by the factors set forth in Mathews v. Eldridge, 424 U.S. 319, 335 (1976)." Velez, 401 F.3d at 93.

   c.  Plaintiff's Claims Against Defendant Diana in his Official Capacity

As noted, the Plaintiff asserts that "[Defendant] Edward Diana, as County Executive who set policy for the executive branch of Orange County government, clearly failed to investigate the basis for any charges against plaintiff prior to publicizing that charges would be brought against the plaintiff . . . ." See Compl. at p. 17, ¶4(e). This claim against Defendant Diana in his official capacity is tantamount to a claim against Orange County itself under Monell. See Monell, 436 U.S. at 690 n.55.

The actions of a final decision maker who, under state law, sets policy for a municipality may subject that municipality to suit under § 1983. See Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (action that is taken by a municipality's authorized decisionmakers represents an official action that consititutes the municipality's policy); Jett v. Dallas Independent School

45

District, 491 U.S. 701, 737 (1989) (final decisionmaker determined by state law).  Because the

Plaintiff's factual assertions must be accepted as true on a Rule 12(b)(6) motion to dismiss,

EEOC v. Stated Island Sav. Bank, 207 F.3d 144, 148 (2d Cir. 2000), and because I have

recommended that the Plaintiff has stated a colorable procedural due process claim against

Defendant Diana in his personal capacity, I conclude, and respectfully recommend that Your

Honor should conclude, that the Plaintiff has stated a valid claim against Defendant Diana in his

official capacity, and by extension, a valid "stigma-plus" procedural due process claim against

Orange County under Monell and its lineage.  See Berweger v. County of Orange, 121 F. Supp.

2d 334, 346-47 (S.D.N.Y. 2000) (county executive held to be a final decisionmaker for purposes

of Monell).  Accordingly, the motion to dismiss the Complaint as to Defendant Diana in his

official capacity should be denied.

        d.        Summary

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor

should conclude, that the Plaintiff has stated a colorable claim for relief against Defendant Diana

in his personal capacity for a procedural due process "stigma-plus" deprivation of his liberty, and

has stated an analogous claim against Defendant Diana in his official capacity under Monell.

        4.        Defendant Francis Phillips, Orange County District Attorney

        a.        Plaintiff's Claims Against Defendant Phillips in his Personal Capacity

Analogous to the charges levied against Defendant Conway, supra, Plaintiff maintains

that Defendant Francis Phillips (herein, "Defendant Phillips") initiated New York State criminal

felony charges against him without probable cause and in violation of his due process rights

under the Fifth and Fourteenth Amendments.  See Compl. at p. 18, ¶4(f).  Plaintiff also argues

that the commencement of the New York State criminal charges caused him to expend

substantial funds to hire legal counsel to defend himself and that Defendant Phillips is culpable –

but to a lesser degree than the other named defendants – for the alleged deprivation of his right to

counsel under the Sixth Amendment during his time in federal pretrial detention.  Id.

        b.        Defendant Phillips' Motion to Dismiss

For the reasons articulated supra, I conclude, and respectfully recommend that Your

Honor should conclude, that the Plaintiff's claim of a Sixth Amendment right to counsel

violation should be dismissed as the Plaintiff's allegations against Defendant Phillips amount to

legal conclusions that fail to state a colorable civil rights claim.  See Murphy, 946 F. Supp. at

1116.  It is self-evident that Defendant Phillips, the Orange County District Attorney, has no

control over the communications system employed by Westchester County that the Plaintiff

claims is biased against federal pre-trial detainees who retain their own legal counsel.

Accordingly, I conclude and respectfully recommend that Defendant Phillips' motion to dismiss

Plaintiff's Sixth Amendment violation be granted.

Plaintiff alleges that "[c]harges brought without any probable cause by a subdivision of a

state are by definition in violation of plaintiff's constitutional right to Due Process under the

Fifth Amendment and applicable to 'state action' under the Fourteenth Amendment . . . ."  See

Compl. at p. 18, ¶4(f).  As explained supra, claims of improper criminal proceedings are best

analyzed as a Fourth Amendment common law tort, not as a generic due process claim.  See

Albright v. Oliver, 510 U.S. 266, 274-75 (1994); Bryant v. City of New York, 404 F.3d 128,

135-36 (2d Cir. 2005).  Initiating claims without probable cause sounds in malicious prosecution,

the elements of which have been identified and discussed, supra.  See, e.g., Bernard, 25 F.3d at

104.  Because the Plaintiff has identified the basic facts which he believes gives rise to his cause of action – that Defendant Phillips initiated a criminal proceeding against him, that the charges were "dismissed as a matter of law as having no basis in law or fact," <u>see</u> Compl. at p. 17, ¶4(f), and that such actions were taken without probable cause – I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff has stated a prima facie case of malicious prosecution and that Defendant Francis' motion to dismiss Plaintiff's malicious prosecution claim against him in his personal capacity should be denied.

            c.       Plaintiff's Claims Against Defendant Phillips in his Official Capacity

Plaintiff also asserts a claim against Defendant Francis in his official capacity.  <u>See</u> Compl. at p. 17 ¶4(f) ("[Defendant Francis is] the head of the Orange County department charged with investigation of criminal violations . . .").  As already explained, a suit against a state actor in his or her official capacity is tantamount to a suit against the entity "of which an officer is an agent."  <u>Graham</u>, 473 U.S. at 166-67 (citation omitted).  As explained, in order for a municipality to be held liable under <u>Monell</u>, the Plaintiff must assert that his cause of action arises from a policy or custom of that municipality, 436 U.S. at 694, or from the actions of a final decision maker whose decisions constitute a policy or custom of the municipality, <u>see</u>, <u>e.g.</u>, <u>Jett</u>, 491 U.S. at 737 (citing <u>St. Louis v. Praprotnik</u>, 485 U.S. 112, 124 n.1 (1988)).  The issue of who is a final decision maker for a municipality under <u>Monell</u> is a question of law to be decided by the court in accord with principles of state law.  <u>Id.</u>

The Second Circuit has held that a publically elected district attorney represents the State, not the County, when he or she exercises his or her authority when "decid[ing] when and in what manner to prosecute a suspected offender."  <u>Baez v. Hennessy</u>, 853 F.2d 73, 77 (2d Cir.

1988).  Consequently, because an elected district attorney operates as a functionary of the State, and not the County, his or her prosecutorial decisions do not constitute a municipal policy or custom attributable to the County under <u>Monell</u>.  <u>Id.</u>; <u>but</u> <u>see</u> <u>Gentile v. County of Suffolk</u>, 926 F.2d 142, 153 n.5 (2d Cir. 1991) (distinguishing <u>Baez</u> and holding a claim that a district attorney's actions in his or her managerial role, as opposed to his or her prosecutorial role, can be attributed to a local government under <u>Monell</u>).

As the Plaintiff has not raised the specter that Defendant Phillips is liable because of actions taken in his managerial role, but only has argued that the prosecutorial decisions Defendant Francis made as Orange County District Attorney violated the Plaintiff's civil rights,[13] I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff's Complaint as to Defendant Francis in his official capacity should be dismissed for failure to state a claim.

       d.     Summary

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff's Complaint against Defendant Phillips in his official capacity should be dismissed, and that the Plaintiff's Complaint against Defendant Phillips in his personal capacity should be dismissed in part.

     5.     <u>Defendant Jane Doe and Unknown Agency, Orange County</u>

---

[13] Plaintiff alleges that "Defendant Francis Phillips, Orange County District Attorney, prosecuted plaintiff . . . [and] as the head of the Orange County department charged with investigation of criminal violations, should clearly have understood that with no independent investigation into there being any evidence whatsoever to support probable cause for any of the charges . . . ."  <u>See</u> Compl. at p. 17, ¶4(f).

Lastly, Plaintiff asserts a claim against "Jane Doe and Unknown Agency, Orange County" for making alleged false statements to some of the Plaintiff's prospective employers, thus denying him his "constitutional rights to reputation, his right to follow a chosen profession, and his right to be professionally licensed . . . ." See Compl. at p. 18, ¶4(g).

Because the Plaintiff offers nothing more than these bald assertions and conclusory allegations against a rogue, unidentified agent of an unspecified agency of the Orange County government, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff fails to state a claim for relief. Insofar as the Plaintiff insists that his liberty interest in his reputation has been violated by actions attributable to Orange County, I already have recommended that this claim proceed forward against Defendants Diana in his official capacity. Thus, dismissing the claim of a purported violation of Plaintiff's liberty interest in his reputation against an unknown employee of Orange County does not foreclose the Plaintiff from proceeding forward with this claim against Orange County under Monell. Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff's claim against Jane Doe should be dismissed.

D.      The Federal Defendants [14]

The Plaintiff asserts a litany of complaints against various members of the United States Attorney's Office for the Southern District of New York and several criminal investigators involved with the Joint Terrorism Task Force (herein, JTTF) who participated in the initial

---

[14] Contrary to his allegations against the other defendants, the Plaintiff explicitly states that he is suing each of the federal defendants in their personal capacities. See Compl. at p. 1. Because the federal defendants are sued in their personal capacities, they may be entitled to the protection of the personal immunity defenses, such as absolute and qualified immunity. See Graham, 473 U.S. at 166-67.

search of the Plaintiff's house and arrested the Plaintiff for suspected violations of federal law in September of 2002. <u>See</u> Compl. at pp. 4–11, ¶¶3(a) - (d). Similar to the organization of his allegations against the Orange County Defendants, Plaintiff avers separate factual allegations against each of the individually named federal defendants. <u>Id.</u>

       1.    <u>Defendants James Comey and Stephen Miller Sued in Their Personal Capacities</u>

          a.    Plaintiff's Claims Against Defendants Comey and Miller

Plaintiff produces a jeremiad against Defendant James Comey, former United States Attorney for the Southern District of New York (herein, "Defendant Comey"), and Defendant Stephen Miller, Assistant United States Attorney for the Southern District of New York (herein, "Defendant Miller"), alleging conspiratorial acts designed to deprive him of his constitutional rights to liberty and property. <u>See</u> Compl. at p. 4 ¶3(a). In particular, Plaintiff suggests that Defendants Comey and Miller "fabricat[ed] phony felony convictions and phony felony charges in order to remove non-traceable cash from plaintiff's residence and arrest and confine plaintiff on charges of being a felon in possession of a firearm . . . and building a chemical weapon . . . ." <u>See</u> Compl. at p. 4, ¶3(a). Plaintiff also alleges that "Miller and/or Comey and [Defendant Keith] Talbert developed a non-existent 'confidential informant' " in order to prevent the Plaintiff from "challeng[ing] his arrest and confinement on the basis of no probable cause." <u>See</u> Compl. at p. 5, ¶3(a). Lastly, Plaintiff argues that "Comey, Miller and [Defendant Daniel] Hourihan denied plaintiff his constitutional right to Equal Protection" when they filed criminal charges against him based upon his "choice of profession," <u>see</u> Compl. at pp. 7 - 8, ¶3(a), and "either invited" Defendant Weber "or provided" Defendant Weber with false information with the intention that such false information would be distributed to the public at large, <u>see</u> Compl. at

p. 7, ¶3(a).

Separately, Plaintiff accuses Defendant Miller of making "false assertions in public to a medium which he knew would publicize them to a wide audience in the local community . . . for the purpose of depriving [him] of his constitutional rights." See Compl. at p. 4, ¶3(a). Plaintiff also suggests that Defendant Miller "depriv[ed] plaintiff of his constitutional rights by maintaining him in custody and prejudicing government authorities against [him] [when he] publicly asserted a 'sample' 'recovered in plaintiff's residence' was being tested for 'picric acid,' an 'explosive,' " see Compl. at p. 6 ¶3(a), and that he "asserted in court that analysis showed that 'sample' was not 'brown sugar . . . ,' " id. Lastly, Plaintiff argues that Defendant Miller improperly charged him with a violation of 18 U.S.C. §875(c), which makes it a crime to transmit a threat in interstate commerce. Id.

b.    Defendants Comey and Millers' Motion to Dismiss

A prosecutor enjoys absolute immunity from suit for damages in a §1983 cause of action when his or her actions fall "within the scope of his [of her] duties in initiating and pursuing a criminal prosecution." Imbler v. Pachtman, 424 U.S. 409, 410 (1976). Such actions are intimately associated with a prosecutor's role as an advocate, Buckely v. Fitzsimmons, 509 U.S. 259, 273 (1993), and "because the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions," Shmueli v. The City of New York, 424 F.3d 231, 237 (2d Cir. 2005) (citing Imbler, 424 U.S. at 430), a prosecutor enjoys absolute immunity from suit based upon his or her actions in this role unless he or she "proceeds in the clear absence of all jurisdiction." Id. (quoting Barr v. Abrams, 810 F.2d 358, 361 (2d Cir. 1987)). A court does not consider a prosecutor's motive for commencing a criminal proceeding when analyzing whether

that prosecutor is entitled the protection of absolute immunity.  See, e.g., Shmueli, 424 F.3d at 237-38 (citing cases).

I conclude, and respectfully recommend that Your Honor should conclude, that almost all of the Plaintiff's assertions against Defendants Comey and Miller focus on the actions they took while in their roles as advocates, and that therefore Defendants Comey and Miller should both be afforded the protection of absolute immunity.  On an abundance of occasions Plaintiff charges that both Defendants strove to deprive him of his liberty and property by "fabricating phony felony convictions and phony felony charges . . . and arrest[ed] and confine[d] the plaintiff on charges of being a felon in possession of a firearm . . . ."  See Compl. at p. 4, ¶3(a).  Plaintiff also maintains that Defendants Comey and Miller "denied plaintiff his constitutional right of Equal Protection under the Fourteenth Amendment . . . by claiming probable cause for federal criminal charges . . .", see Compl. at p. 7, ¶3(a), and created a phony confidential informant to establish probable cause for his arrest, see Compl. at p. 4, ¶3(a).

Each of these assertions, assuming they are true, go to the "quintessential prosecutorial functions" that have been identified as falling within the protective ambit of absolute immunity. Shmueli, 424 F.3d at 237; see also Burns v. Reed, 500 U.S. 478, 491-92 (1991) (prosecutor's role in applying for search warrant part of role as advocate covered by absolute immunity); Imbler, 424 U.S. at 430 (prosecutor's election to commence criminal proceeding part of role protected by absolute immunity).  Absent a showing that Defendants Comey and Miller acted outside of their jurisdiction – which has not been made – I conclude, and respectfully recommend that Your Honor should conclude, that the protection of absolute immunity for the actions Defendants Comey and Miller took while in their roles as prosecutors "initiating and

pursuing a criminal prosecution" should not be disturbed.  See Imbler, 424 U.S. at 410.

The Plaintiff is correct, however, that as a matter of law, a prosecutor does not enjoy absolute immunity from suit for statements he or she made during a press conference.  See Buckely, 509 U.S. at 277 ("[A prosecutor's] statements to the media are not entitled to absolute immunity.").[15]  The Buckley court determined, however, that prosecutors still enjoy the protection of qualified immunity in such situations.  Id.  Assuming Defendant Miller held such a press conference – which he denies – Plaintiff would have to show that the statements Defendant Miller made at the press conference violated one of his constitutional rights in order to state a colorable § 1983 claim.  As Plaintiff only asserts that Defendant Miller acted with the "sole[] . . . purpose of depriving plaintiff of his constitutional rights," see Compl. at p. 4, ¶3(a), and does not identify which of his constitutional rights he believes was violated, such bald assertions, without more, do not state a claim for relief.  See Ingrassia v. County of Sullivan, 262 F. Supp. 2d 116, 118-19 (S.D.N.Y. 2003) ("legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss") (citations omitted).  Thus, I conclude, and respectfully recommend that Your Honor should conclude, that Defendants Comey and Millers' motion to dismiss should be granted in its entirety.

Assuming, *arguendo*, that the Plaintiff had identified a claim that could survive the instant motion, Plaintiff would then have to establish how Defendant Miller's actions rise to the

---

[15] In reaching this holding, the Buckley Court assumed that the prosecutor's statements at the press conference gave rise to a constitutional violation.  509 U.S. at 261 ("[W]e make [an] important assumption[] . . . that petitioner's allegations . . . allege constitutional violations for which § 1983 provides a remedy.").  Thus, despite the Supreme Court's holding in Buckley that a prosecutor is not entitled to absolute immunity for statements made during a press conference, the Plaintiff still bears the onus of establishing that Defendant Miller's statements rise to the level of an actionable constitutional claim.

level of a constitutional violation.  See Saucier v. Katz, 533 U.S. 194, 201-02 (2001) (explaining

the two-step analysis for qualified immunity protection).  As Defendant Miller suggests,

defamation, which is one of the few torts the Plaintiff could have been referring to in his

Complaint, "by itself, is . . . not a constitutional deprivation."  Siegert v. Gilley, 500 U.S. 226,

233 (1991); see also Paul v. Davis, 424 U.S. 693, 701 (1976) (defamation, alone, is not

actionable under §1983).  Absent a showing of a constitutional violation, Defendant Miller

would be entitled to qualified immunity.

    Thus, because Defendants Comey and Miller enjoy the protection of absolute immunity

for all of the actions Plaintiff alleges against both of them, and because Plaintiff fails to state a

claim for relief against Defendant Miller for statements he made during an alleged press

conference,[16] I conclude, and respectfully recommend that Your Honor should conclude, that the

Plaintiff's Complaint as to Defendants Comey and Miller should be dismissed in its entirety.

    2.    Defendant Donald Weber, Senior Supervisory Special Agent

        a.    Plaintiff's Claims Against Defendant Weber

    In connection with his claims against Defendants Comey and Miller, Plaintiff asserts that

Defendant Weber informed the media that "plaintiff had been convicted of aggravated assault,

knowing such information would be distributed throughout the local community . . .," see

Compl. at p. 7, ¶3(a), with the intent that the Plaintiff lose his job, incur expenses in order to

defend himself against criminal charges, and suffer injury to his professional reputation, id.

Read liberally, Plaintiff attempts to state a "stigma-plus" procedural due process claim in

---

    [16] Similarly, if statements were made in a press release rather than at a press conference,
the same analysis would apply.

55

violation of his Fifth Amendment due process rights.

      b.     Defendant Weber's Motion to Dismiss

Defendant Weber has moved to dismiss the Plaintiff's Complaint against him on the grounds of qualified immunity. A review of the Plaintiff's Complaint leads me to conclude, and respectfully recommend that Your Honor should conclude, that because Defendant Weber acted in an objectively reasonable manner, Defendant Weber is entitled to qualified immunity and the Plaintiff's Complaint against him should be dismissed.

In order to state a colorable procedural due process "stigma-plus" claim, Plaintiff must allege "(1) that [he] possessed a cognizable liberty interest, and (2) that the defendant[] deprived [him] of that same liberty without providing process adequate to justify [his] actions." Velez, 401 F.3d at 87 (citing DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003)). In order to show that he enjoyed a cognizable liberty interest, the Plaintiff must allege "(1) the utterance of a statement about [him] that is injurious to [his] reputation, 'that is capable of being proved false, and that he . . . claims is false,' and (2) 'some tangible and material state-imposed burden . . . in addition to the stigmatizing statement.' " Id. (quoting Doe v. Dep't of Pub. Saftey ex rel. Lee, 271 F.3d 38, 47 (2d Cir. 2001), rev'd on other grounds, Conn. Dep't of Pub. Saftey v. Doe, 538 U.S. 1 (2003)). Material state-imposed burdens include the loss of employment, "or the termination or alteration of some other legal right or status." Id. (citations and quotations omitted). In Velez, the Second Circuit held that "perfect parity in the origin of both the 'stigma' and the 'plus' is not required . . ." id. at 89, and that the stigma and the plus need only be sufficiently proximate to one another so as to appear connected, id. In his Complaint, Plaintiff alleges that Defendant Weber publicized false information about him with the intent to injure the

Plaintiff's professional reputation and to cause him to lose his job.  See Compl at p.7, ¶3(a).

Assuming, *arguendo*, that the Plaintiff can establish a "stigma-plus" procedural due process violation, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant Weber is entitled to qualified immunity because it was "objectively reasonable for [him] to believe [his] acts did not violate [the Plaintiff's] rights."  Weyant v. Okst, 101 F.3d 845, 857-58 (2d Cir. 1996) (citing Anderson v. Creighton, 483 U.S. 635, 638-39 (1987)). Assuming Defendant Weber publicized the Plaintiff's criminal background to the media – an assumption required on a Rule 12(b)(6) motion to dismiss – Defendant Weber had no reason to believe that the information provided by the National Crime Information Center (herein, "NCIC") was untrue or otherwise invalid, and thus had no reason to believe that his actions violated the Plaintiff's constitutional rights.  See Saucier, 533 U.S. at 202; see also Vasquez v. McPherson, 285 F. Supp. 2d 334, 341 (S.D.N.Y. 2003) (concluding that reliance on an NCIC hit was objectively reasonable for purposes of qualified immunity and citing cases); see also Docket #37, Declaration of Vernon Geberth (herein, "Geberth Declaration"), Exhibit A, NCIC Database Printout.

Absent a serious challenge by the Plaintiff to the validity of the NCIC report, see, e.g., Codd v. Velger, 429 U.S. 624, 628-29 (1977) ("an issue about the substantial accuracy of the report" must be raised in order to bring a challenge to the legitimacy of a report on the grounds that it is false), I conclude, and respectfully recommend that Your Honor should conclude, that Defendant Weber acted in an objectively reasonable manner when he relied upon the information

in the NCIC report.[17]  Thus, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff's Complaint as to Defendant Weber should be dismissed on the grounds of qualified immunity.

       3.      <u>Defendant Kenneth Maxwell, FBI Special Agent</u>

          a.      Plaintiff's Claims Against Defendant Maxwell

In paragraph 3(c) of the Complaint, Plaintiff begins his assailment against Defendant Kenneth Maxwell (herein, "Defendant Maxwell") by listing the rights Defendant Maxwell purportedly violated when he executed a search of his home pursuant to a search warrant.  <u>See</u> Compl. at p.8, ¶3(c).  This enumeration includes allegations that Defendant Maxwell violated Plaintiff's First, Fourth, Fifth and Sixth Amendment rights, and his rights guaranteed by the Privileges and Immunities Clause of the Constitution.  <u>Id.</u>  In an attempt to elucidate the factual circumstances of the alleged impermissible search of his home, Plaintiff suggests that this case is "eerily similar to the facts of <u>Bivens [v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971)] . . . ."  <u>Id.</u>  Akin to the allegations Plaintiff levels against Defendant Weber, Plaintiff also claims that Defendant Maxwell "falsely asserted . . . that a 'box of chemicals' was taken from plaintiff's residence . . . " when Defendant Maxwell spoke with the media.  <u>See</u> Compl. at p. 8, ¶3(c).

In addition to this barrage, Plaintiff places several burdens of proof on Defendant

---

[17] It should be noted that this conclusion is not incongruous with my earlier conclusion that it is not possible at this time to determine, as a matter of law, that Defendant Conway acted reasonably when he relied upon the information from a New Jersey criminal background check. The determination of whether an individual acted with the requisite degree of probable cause is different than the determination of whether an officer's conduct violated a clearly established constitutional right.

Maxwell, including the burden of producing a "certified chemical compound analysis from a certified analytical laboratory" for the purposes of establishing the existence of any chemical compounds seized from his residence.  See Compl. at p. 9, ¶3(c).  Within this prolix, Plaintiff also avers that Defendant Daniel Hourihan of the New York City Police Department accused the Plaintiff of producing anthrax.  Id.

        b.        Defendant Maxwell's Motion to Dismiss

The zeal with which the Plaintiff asserts his claims against Defendant Maxwell has no impact on the viability of those claims.  Despite the sundry violations Plaintiff attributes to Defendant Maxwell, I conclude, and respectfully recommend that Your Honor conclude, that the Plaintiff's Complaint against Defendant Maxwell should be dismissed in its entirety under Rule 12(b)(6).

        i.        Plaintiff's First Amendment, Fifth Amendment Deprivation of Property, Sixth Amendment, and Privileges and Immunities Claims

In an effort to state a claim against Defendant Maxwell, the Plaintiff simply regurgitates the list of his rights he believes the other defendants have violated.  This is evinced by the Plaintiff's assertion that Defendant violated Plaintiff's First and Sixth Amendment rights, as well as his rights under the Privileges and Immunities Clause of the Constitution.  See Compl. at p. 8, ¶3(c).  As discussed, supra, Plaintiff has no cognizable First or Sixth Amendment claims against any of the named defendants.  Additionally, the Plaintiff's repeated declaration that his rights under the Privileges and Immunities Clause of the Constitution have been violated is meritless.  As also discussed, supra, it is more appropriate for a claim of improper search and seizure and wrongful arrest to be brought under the Fourth Amendment, not the Fifth Amendment.  See, e.g.,

Albright, 510 U.S. at 274 ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it.").  Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that any claims Plaintiff makes against Defendant Maxwell for deprivations of his physical freedom and property under the Fifth Amendment should be dismissed.  See id.

        ii.     Plaintiff's Fifth Amendment Deprivation of Liberty Claim

Insofar as Plaintiff alleges that Defendant Maxwell made false assertions to the local media depriving him of his due process rights to his reputation, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff fails to state a claim against Defendant Maxwell.  As noted supra, in order to state a colorable "stigma-plus" procedural due process claim, the Plaintiff must allege "some tangible and material state-imposed burden . . . in addition to the stigmatizing statement."  Velez, 401 F.3d at 87 (citations omitted).  A review of the Plaintiff's allegations against Defendant Maxwell, however, leads me to conclude that the Plaintiff has only asserted that Defendant Maxwell made a stigmatizing statement; Plaintiff does not allege the "tangible and material state-imposed burden" required for a showing of prima facie showing of a stigma-plus claim.  Id.; see Compl. at p. 8, ¶3(c) ("FBI Agent Maxwell or an FBI agent reporting to him further informed neighbors of the plaintiff that no chemicals were in the plaintiff's residence even before the bomb squad stunt before later publicly declaring to the Times-Herald Record that chemicals were found in plaintiff's residence." [sic]).  Absent an allegation that he suffered some materially adverse action because of Defendant Maxwell's actions, the Plaintiff fails to state a claim for relief for a "stigma-plus" procedural due process claim against Defendant Maxwell.  See Velez, 401 F.3d at 87 ("A § 1983 liberty interest claim of

60

this sort . . . requires a plaintiff to allege . . . some tangible and material state imposed burden . . . .") (citations omitted).

Thus, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant Maxwell's motion to dismiss Plaintiff's Fifth Amendment procedural due process deprivation of liberty claim should be granted.

### iii. Plaintiff's Fourth Amendment Claims

As a point of comparison to his Fourth Amendment claims against Defendant Maxwell, Plaintiff suggests that the present cause of action is "eerily similar to the facts of Bivens . . . ." See Compl. at p. 8, ¶3(c). A review of the facts of Bivens, however, illustrates more differences than likenesses with the present case. In Bivens the Plaintiff, Mr. Webster Bivens, alleged that six unidentified federal agents entered his apartment in Brooklyn, New York, searched his apartment without a search warrant, and arrested the Plaintiff without an arrest warrant. See Bivens, 403 U.S. at 389 n1; Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 409 F.2d 718, 719 (2d Cir. 1969); Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 276 F. Supp. 12, 13 (E.D.N.Y. 1967) ("Plaintiff alleges in his complaint that the defendants arrested him and instituted a search and seizure, [sic] without possessing warrants."). In the instant matter, however, the defendants obtained a search warrant to search the Plaintiff's residence and filed a sealed Complaint against the Plaintiff alleging a violation of 18 U.S.C. §922(g)(1), which authorized the arrest of the Plaintiff. See Miller Declaration, Ex.B.

A fair reading of the Plaintiff's Complaint against Defendant Maxwell leaves a reader uncertain as to nature of the Fourth Amendment violations he believes Defendant Maxwell committed. Assuming, *arguendo*, that the Plaintiff is challenging the propriety of the search of

his home, the Plaintiff bears the "heavy burden" of proving that the search warrant which authorized such a search was procured by fraud.  See Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991).  In order for the Plaintiff to maintain such a claim, the "plaintiff must make a 'substantial preliminary showing' that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was 'necessary to the finding of probable cause.' " Id. (citation omitted).

A review of the Plaintiff's Complaint, however, leads me to conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff has not met this heavy burden. Plaintiff fails to allege with any specificity that Defendant Maxwell knowingly used false information to secure the search warrant of Plaintiff's home so as to refute the presumption of probable cause based upon the search warrant's issuance.  See Compl. at p. 8, ¶3(c) ("Knowingly making false statements and certifying to the United States District Court for the Southern District of New York that there was actually a chemical sample in plaintiff's residence knowing there was no such sample were actions to deprive citizens of their constitutional rights . . ."). Plaintiff's *ipse dixit*, without more, does not negate the "presumption that it was objectively reasonable for the officers to believe there was probable cause, " Golino, 950 F.2d at 870, upon the issuance of a search warrant by a United States Magistrate Judge.  See, e.g., Murphy v. Cadillac Rubber & Plastics, 946 F. Supp. 1108, 1116-17 (W.D.N.Y. 1996) ("a complaint asserting a civil rights violation must set forth specific factual allegations establishing a prima facie case.  Naked assertions and conclusory allegations in the complaint are not sufficient to state a claim.") (citations omitted).

For these reasons, I conclude, and respectfully recommend that Your Honor should

conclude, that Defendant Maxwell's motion to dismiss the Plaintiff's Complaint should be granted.

4. <u>Defendant Keith Talbert, Criminal Investigator for Southern District of New York</u>

a. Plaintiff's Claims Against Defendant Talbert

Analogous to his other accusations, Plaintiff contends that Defendant Keith Talbert (herein, "Defendant Talbert") made knowingly false statements in an effort to deprive the Plaintiff of his constitutional rights to liberty. <u>See</u> Compl. at p. 9, ¶4(d). In support of this argument, Plaintiff states cryptically, "[Defendant Talbert] is not entitled to qualified immunity for [Defendant Talbert's] actions in depriving plaintiff of his constitutional rights by maintaining him in confinement after all bases for the original federal criminal charges were dismissed immediately upon plaintiff being brought before a federal magistrate . . . ." <u>Id.</u> From this assertion, it appears Plaintiff seeks to state a claim for false imprisonment under the Fourth Amendment rather than a deprivation of liberty under the Fifth Amendment. Plaintiff also argues that as a result of this impermissible confinement, Defendant Talbert violated his Sixth Amendment right to confront witnesses as well as the Eighth Amendment prohibition against excessive bail. <u>Id.</u>

b. Defendant Talbert's Motion to Dismiss

I conclude, and respectfully recommend that Your Honor should conclude, that any claims Plaintiff may have for false imprisonment and false arrest against Defendant Talbert should be dismissed for failure to state a claim. The Second Circuit has held that "<u>Bivens</u> actions are not significantly dissimilar to claims brought under §§ 1981 and 1983 . . .," <u>Tavarez v. Reno</u>, 54 F.3d 109, 110 (2d Cir. 1995), and that the elements of a civil rights cause of action

under § 1983 are analogous to the elements of a similar civil rights claim under <u>Bivens</u>. Thus, to successfully establish a cause of action of false arrest and false imprisonment under <u>Bivens</u>, the Plaintiff must show that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." <u>Singer v. Fulton County Sheriff</u>, 63 F.3d 110, 118 (2d Cir. 1995) (citations omitted). Probable cause is a complete defense to the claims of false arrest and false imprisonment. <u>Bernard v. U.S.</u>, 25 F.3d 98, 102 (2d Cir. 1994). The burden is on the Defendants to show the existence of probable cause as an affirmative defense. <u>Broughton v. State of New York, et. al.</u>, 37 N.Y.2d 451, 458 (1975).

In the present case, Defendant Talbert made statements under oath in support of a Complaint against the Plaintiff for a violation of 18 U.S.C. § 875(c).[18] A federal law enforcement agent may rely upon the reports of an informant to establish probable cause when the "totality of the circumstances" demonstrates that the informant's information is reliable and truthful. <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983). Additionally, a disinterested and detached United States Magistrate Judge reviewed the information provided by Defendant Talbert and independently determined that probable cause existed to issue the Complaint. Any alleged

---

[18] Although the Plaintiff alleges that Defendant Talbert made false statements in his affidavit in support of a Complaint for a violation of 18 U.S.C. §922(g)(1), the Complaint as to 18 U.S.C. §922(g)(1) was signed by Defendant Hourihan, not Defendant Talbert. <u>See</u> Compl., Ex. A; <u>see also</u> Miller Declaration, Ex.B. Defendant Talbert's signature only appears on the Complaint as to a violation of 18 U.S.C. § 875(c). <u>See</u> Compl., Ex. B; <u>see also</u> Miller Declaration, Ex. C. Thus, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff "can prove no set of facts in support of his claim" that Defendant Talbert knowingly asserted false information in support of a complaint for a violation of 18 U.S.C. § 922(g)(1), and that any claims arising from this allegation against Defendant Talbert should be dismissed. <u>See</u> <u>Padavan v. United States</u>, 82 F.3d 23, 26 (2d Cir. 1996).

detention the Plaintiff complains of thereafter was authorized pursuant to the issuance of the Complaint, and in order for the Plaintiff to challenge his arrest, which was supported by probable cause, the Plaintiff "must make a 'substantial preliminary showing' that [Defendant Talbert] knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit. . . ." Golino, 950 F.2d at 870. Even under the liberal *pro se* standard, a review of the Plaintiff's submissions leads me to conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff has not made this initial showing, and that Defendant Talbert's motion to dismiss any Fourth Amendment common law tort claims should be granted.

I also conclude, and respectfully recommend that Your Honor should conclude that the Plaintiff's suggestion of Sixth and Eighth Amendment violations should also be dismissed under Rule 12(b)(6) for failure to state a claim. Plaintiff injects the novel argument that his "right to confrontation of his accusers under the Sixth Amendment" was violated when he was held in pretrial detention subsequent to his arrest. See Compl. at p. 11, ¶3(d). Although the jurisprudence of the Confrontation Clause of the Sixth Amendment has undergone a recent reevaluation, this resurgence does not include the right to cross-examine a confidential informant before trial. See, e.g., Crawford v. Washington, 541 U.S. 36, 42-43 (2003) (noting that the scope of the Sixth Amendment's Confrontation Clause could be read to require confrontation of a witness who actually testifies at trial, to require confrontation of a witness whose statements are used at trial, or "something in-between . . . ."). Absent proceeding to trial and being denied the right to confront a witness against him at that point in the criminal litigation, the Plaintiff does not have a tenable Sixth Amendment Confrontation Clause claim.

Plaintiff also proposes that his Eighth Amendment "right to bail" was violated while he

was in federal pretrial detention.  <u>See</u> Compl. at p. 11, ¶3(d).  The Eighth Amendment, however, does not guarantee an individual the right to bail; it merely mandates that "[e]xcessive bail shall not be required, nor excessive fines imposed . . . ."  U.S. CONST. amend. VIII.  The Supreme Court made this explicitly clear in <u>Carlson v. Landon</u>, 342 U.S. 524 (1952), when it stated that "the very language of the [Eighth] Amendment fails to say all arrests must be bailable," <u>id.</u> at 546, and that"[t]he Eighth Amendment has not prohibited Congress from defining the classes of cases in which bail shall be allowed . . .," <u>id.</u> at 545.

Thus, the Plaintiff's allegations that his arrest led to an unconstitutional deprivation of his right to bail are meritless.  Insofar as Plaintiff alleges that Defendant Talbert used false information to secure his arrest and violated his Eighth Amendment rights, such a claim is duplicative of Plaintiff's Fourth Amendment common law claims which I have already addressed, <u>supra</u>.  Accordingly, I conclude and respectfully recommend that Your Honor should conclude, that the Plaintiff has failed to state a claim for relief under the Eighth Amendment against Defendant Talbert and that the motion to dismiss the Complaint as to him should be granted.

Lastly, for the same reasons articulated, <u>supra</u>, the Plaintiff has not stated a valid claim for relief under the Privileges and Immunities Clause of either Article IV or the Fourteenth Amendment.  Thus, I conclude and respectfully recommend that Your Honor should conclude, that Defendant Talbert's motion to dismiss these allegations be granted as well.

     5.     <u>Defendant Daniel Hourihan, New York City Police Officer</u>

     a.     Plaintiff's Claims Against Defendant Hourihan

In his allegations against Defendant Daniel Hourihan (herein, "Defendant Hourihan"),

Plaintiff once again recites the sundry violations he has already interposed against the other

defendants, including violations of his rights to "free speech, liberty, property, the right to earn a

living in his chosen profession, the right to join a political party and to run for public office, the

right to be free of preventative detention, and the right to earn a living without being arrested

based upon an invidious classification in violation of the Equal Protection clause . . . ." See

Compl. at p. 11, ¶4(a).  After enumerating this list of violations, Plaintiff specifically states his

First, Fourth, Fifth and Fourteenth Amendment rights were violated, as well as his

"constitutional right[] as a citizen under the Privileges and Immunities Clause of the Constitution

to join a political party and run for public office . . . ." Id.  Plaintiff also attributes the

disappearance of money from his residence during the execution of the search warrant and the

creation of phony criminal records within the National Crime Information Center to Defendant

Hourihan.  Id.

As I explain, infra, I conclude, and respectfully recommend that Your Honor should

conclude, that the Plaintiff has failed to state a claim for relief for violations of his First, Fifth,[19]

and Eighth Amendment rights, and also fails to state a claim for relief under the Privileges and

Immunities Clause of the United States Constitution.  I also conclude, and respectfully

recommend that Your Honor should conclude, that the Plaintiff attempts to assert several Fourth

---

[19] As Defendant Hourihan is construed as working for the federal government in this motion, and not for the state, Plaintiff's selective enforcement claim brought under the Fourteenth Amendment's equal protection clause should be construed as a Fifth Amendment due process violation.  The Supreme Court has held that the Fourteenth Amendment itself is inapplicable to the federal government, but that the Fourteenth Amendment's provisions are applicable to the federal government through the due process clause of the Fifth Amendment. See Bolling v. Sharpe, 347 U.S. 497, 500 (1954) (holding that a claim of racial discrimination against the federal government can be asserted as a Fifth Amendment due process violation).

Amendment causes of action against Defendant Hourihan for improperly securing a search warrant of his residence, arresting him without valid probable cause, and using the legal process to obtain an impermissible collateral objective.  See Compl. at pp. 11-12, ¶4(a).  As the Plaintiff either has failed to present sufficient facts that could support these claims or has not made the initial showing challenging the presumption of probable cause, both discussed infra, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant Hourihan's motion to dismiss should be granted.

b.     Defendant Hourihan's Motion to Dismiss

As many of the allegations made by the Plaintiff are duplicative of his earlier assertions, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant Hourihan's Rule 12(b)(6) motion to dismiss the Plaintiff's Complaint should be granted.  As I have already explained for Your Honor, supra, the Plaintiff is unable to state a claim for relief under the First Amendment,[20] the Eighth Amendment,[21] or the Privileges and Immunities Clause of either Article IV, Section Two, Paragraph One, or the Fourteenth Amendment.[22]

---

[20] In supporting his claim of a First Amendment violation, Plaintiff provides the following aberration, "Detective Daniel Hourihan fabricated these allegations to deprive plaintiff of his constitutional right under the First Amendment and 14th Amendment to validate and publish that members of the New York City Police Department in Pearl River, New York, were either Irish Republican Army terrorists or aided and abetted the Irish Republican Army by making an Irish Republican Army member the Grand Marshal for the St. Patrick's Day Parade . . . ."  See Compl at p. 13, ¶4(a).

[21] As explained, supra, the Plaintiff enjoys no constitutional right to be free from preventive detention under the Eighth Amendment.

[22] In his claim of a Privileges and Immunities Clause violation against Defendant Hourihan, the Plaintiff specifically identifies that his rights to join a political party, and to run for and hold public office, as guaranteed by this provision, were violated.  The Plaintiff supplies the Court with no support for this assertion, and the undersigned has been unable to identify any precedent for the Plaintiff's argument that these rights are a part of the fundamental rights

i.      Plaintiff's Fifth Amendment Claims

Plaintiff argues that Defendant Hourihan violated his rights to equal protection and his procedural due process rights when he searched his home, seized items during the execution of a federally issued search warrant, and arrested him "based upon an invidious classification in violation of the Equal Protection clause of the Fourteenth Amendment to the United States Constitution."  See Compl. at p. 12, ¶4(a).

I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff fails to articulate which group of "similarly situated individuals" the Plaintiff is comparing himself to in order to state a meritable equal protection claim.  See Graham, 230 F.3d at 39 (explaining that a plaintiff bears the burden of establishing that the group he or she seeks to compare himself or herself to is similarly situated in all material respects).  Moreover, the Plaintiff does not specify which legally cognizable grounds, such as race or gender, he believes served as the predicate for the disparate treatment he claims to have suffered.[23]  As such, I conclude and respectfully recommend that Your Honor should conclude, that these claims should be dismissed under Rule 12(b)(6).

---

guaranteed under Article IV Section Two of the United States Constitution or by the Fourteenth Amendment.

[23] In making this particular claim, Plaintiff declares that his "right to earn a living without being arrested based upon an invidious classification in violation of the Equal Protection clause of the Fourteenth Amendment to the United States Constitution" was violated.  See Compl. at p. 14, ¶4(a).  While Plaintiff has previously identified his chosen occupation as the purported basis on which the defendants based their disparate treatment, in this particular claim, Plaintiff has put forth no such claim.  Assuming, *arguendo*, that the Plaintiff is re-arguing a equal protection violation based upon his occupation, this challenge must fail for the same reasons I have explained, supra.

In addition to the Plaintiff's equal protection claim violative of the Fifth Amendment's due process clause, the Plaintiff also attempts to assert a procedural due process claim against Defendant Hourihan based upon the government's alleged failure to "return[] cash removed from the [Plaintiff's] residence almost two years ago . . . ." See Compl. at p. 14, ¶4(a). Plaintiff alleges that his "repeated requests [to] the FBI and the New York City Police Department . . ." for the return of his money have gone unanswered. Id. Construed liberally, these assertions suggest a violation of procedural due process.

I conclude, and respectfully recommend that Your Honor should conclude, however, that the Plaintiff's allegations fail to state a colorable procedural due process claim. Although either a pre or post-deprivation hearing is required upon the deprivation of one's property by the state or federal government, see, e.g., Hellenic American Neighborhood Action Committee v. The City of New York, 101 F.3d 877, 880 (2d Cir. 1996) (explaining the circumstances requiring either a pre or post-deprivation hearing), and failing to provide the appropriate process may give rise to a procedural due process claim, id., in this case, Federal Rule of Criminal Procedure 41(g) provides an adequate post-deprivation remedy that the Plaintiff could have engaged in that satisfies the dictates of the Constitution's guarantee of procedural due process. See Snype v. New York City, 04 Civ. 8268 (DLC),2006 WL 345861, * 4 (S.D.N.Y. Feb. 15, 2006) ("the availability of an adequate postdeprivation remedy will defeat a procedural due process claim brought pursuant to Section 1983.") (citing Hellenic American, 101 F.3d at 881).[24]

Pursuant to Federal Rule of Criminal Procedure 41(g), "[a] person aggrieved by an

---

[24] Although Snype dealt with a challenge to a state deprivation of property pursuant to § 1983, as noted, supra, the Second Circuit has held that the elements of claims brought under both § 1983 and Bivens are closely aligned. See Tavarez, 54 F.3d at 110.

unlawful search and seizure of property or by the deprivation of property may move for the property's return."  The Plaintiff, upon a proper motion to the district court handling the Plaintiff's criminal proceeding, could have petitioned for the return of any property seized during the search of his residence, and the district court could have ordered such a return of property pursuant to its equitable jurisdiction.  See Adeleke v. United States, 355 F.3d 144, 151 (2d Cir. 2004).  As the Federal Rules of Criminal Procedure provide the Plaintiff with an appropriate postdeprivation remedy to petition for the return of his property, I conclude and respectfully recommend that Your Honor should conclude, that the Plaintiff does not have a meritable claim that he was deprived of his property without due process of law.  See, e.g., Giglio v. Dunn, 732 F.2d 1133, 1135 n.1 (2d Cir. 1984) (failure to avail oneself of procedure challenging deprivation of property held to bar subsequent claim of procedural due process violation); see also Adelek, 355 F.3d at 151 (holding that money damages cannot be awarded pursuant to a Rule 41(g) motion for the return of property).  Accordingly, I conclude that the Plaintiff's allegations against Defendant Hourihan amounting to a violation of procedural due process should be dismissed for failure to state a claim.

ii.      Plaintiff's Fourth Amendment Claims

Lastly, a liberal reading of the *pro se* Complaint demonstrates that the Plaintiff believes Defendant Hourihan initiated a search of his home and arrested him based upon information which he knew to be false.  See Compl. at p. 11-12, ¶4(a).  Plaintiff's claims amount to allegations of Fourth Amendment violations for illegal search and seizure, false arrest, malicious prosecution and abuse of process.  Plaintiff maintains that Defendant Hourihan used information known to be false in his affidavit in support of the federal Complaint charging Plaintiff with a

violation of 18 U.S.C. §922(g)(1) and in support of the search warrant authorizing the search of his residence.  <u>See</u> Compl. at pp. 11-15, ¶4(a).

As explained, <u>supra</u>, "a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden . . . ."  <u>Golino</u>, 950 F.2d at 870.  "The issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause."  <u>Id.</u> As in this case, when a Plaintiff challenges the sufficiency of the evidence put forth to the court in an effort to obtain a search warrant, "the plaintiff must make a 'substantial preliminary showing' that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit . . . ."  <u>Id.</u> (citations omitted).

Reading the Complaint liberally, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff has not made the initial "substantial preliminary showing" refuting the presumption of probable cause so as to state a colorable claim for illegal search and seizure or false arrest under §1983.  This conclusion is bolstered by the fact that Defendant Hourihan searched the Plaintiff's residence after a United States Magistrate Judge reviewed the information and determined for himself that probable cause existed to issue the search warrant.  <u>See Golino</u>, 950 F.2d at 870 (issuance of a warrant by a neutral magistrate creates the presumption that it was objectively reasonable to believe that probable cause existed).

As to any possible claim that the Plaintiff may have for malicious prosecution, the Plaintiff has not alleged that the federal criminal proceedings initiated against him terminated in his favor.  <u>See Heck v. Humphrey</u>, 512 U.S. 477, 486-87 (1994) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal

proceeding in favor of the accused."); Tavarez, 54 F.3d at 110 (holding that Heck applies to claims for malicious prosecution brought under Bivens). Separately, as Defendant Hourihan, who worked cooperatively with the federal government, had no involvement in the initiation of the state criminal charges against him, the Plaintiff cannot state a colorable claim of malicious prosecution against Defendant Hourihan based upon the commencement of state criminal proceedings. See Wright, 21 F.3d at 501 (personal involvement is the *sine qua non* to establishing a tenable civil rights claim). Thus, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff has failed to state a claim for malicious prosecution based upon the commencement of either the federal or state criminal proceedings.

Finally, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff has not established the prima facie elements for the tort of abuse of process. See Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994) (tort of malicious abuse of criminal process includes showing that defendant issued legal process with intent to do harm without justification in order to achieve a "collateral objective . . . outside the legitimate ends of the process."). Although the Plaintiff speculates that Defendant Hourihan fabricated information to establish probable cause, Plaintiff does not claim that Defendant Hourihan "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." Brewster v. Nassau County, 349 F. Supp. 2d 540, 550 (E.D.N.Y. 2004) (dismissing a claim of abuse of process on a Rule 12(b)(6) motion because of Plaintiff's vague and conclusory allegations); see also Board of Education of Farmingdale Union Free School District, 38 N.Y.2d at 404 (impermissible collateral objectives supporting claim of abuse of process include blackmail, extortion or retribution).

A statement toward the end of the Plaintiff's requiem against Defendant Hourihan

73

summarizes why, despite the density of verbiage put forth, the Plaintiff fails to state a claim for relief against Defendant Hourihan: "Plaintiff demands the district court determine which of the defendants, if any, carried out the above actions for the deliberate purpose of depriving the plaintiff of his constitutional rights, see list at beginning of Complaint." See Compl. at p.14, ¶4(a). As the complaining party, the Plaintiff bears the burden of proof of establishing the bare minima needed to state a claim for relief against each of the defendants. Plaintiff's exhortations, alone, are insufficient to state actionable claims that can survive a motion to dismiss.

For these reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff has failed to state a claim for relief against Defendant Hourihan.

E.      Plaintiff's Motion for Summary Judgment

On July 9, 2005, the Plaintiff filed a document self-entitled "Notice of motion for summary judgment upon factual issue plaintiff was not a convicted felon nor was he ever a convicted felon." See Docket #49. The Plaintiff's submission, consisting of two pages and an affirmation of service, does not comply with the summary judgment standard articulated in either the Federal Rules of Civil Procedure or this District's Local Rules. See FED. R. CIV. P. 56; see also Local Civil Rule 56.1. As the Plaintiff would have the Court take judicial notice of a genuine issue of material fact, I conclude and respectfully recommend that Your Honor should conclude, that the Plaintiff's purported motion for summary judgment be denied without prejudice.

## **CONCLUSION**

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the defendants' motions to dismiss should be granted in part and denied in part. As a summary, I recommend the following:

(1)     The Complaint as to the Saddle River Defendants should be dismissed in its entirety.

(2)     The Complaint as to Defendant Westchester County be should dismissed in its entirety.

(3)     The Complaint as to the Orange County Defendants should be dismissed in part. Specifically, I recommend that the Plaintiff has stated actionable claims against Defendant Conway in his personal capacity for malicious prosecution and false arrest, against Defendant Diana in his personal capacity for a procedural due process claim for deprivation of his liberty interest in his reputation, and against Defendant Phillips in his personal capacity for a malicious prosecution. Additionally, I recommend that the Plaintiff has stated a <u>Monell</u> claim against Orange County based upon the allegations he has asserted against Defendant Diana in his official capacity giving rise to a "stigma-plus" due process liberty claim. The remaining claims the Plaintiff asserts against the Orange County Defendants in their official and personal capacities should be dismissed.

(4)     The Complaint as to the Federal Defendants should be dismissed in its entirety.

(5)     The Plaintiff's motion for summary judgment should be denied without prejudice.

## NOTICE

Pursuant to 28 U.S.C. 636(b)(1), as amended, and FED. R. CIV. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to FED. R. CIV. P. 6(e), or a total of thirteen (13) working days, see FED. R. CIV. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Stephen C. Robinson at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Robinson.

Dated: August 4, 2006
White Plains, New York

Respectfully Submitted,

Lisa Margaret Smith
Chief United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Stephen C. Robinson, U.S.D.J.